[No. A021111. First Dist., Div. Five. Feb. 20, 1985.]

ANGELO GALLO et al., Plaintiffs and Appellants, v.
PENINSULA HOSPITAL, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*The opinion is to be published, including the judgment, with the exceptions of Parts II, III, and IV.

**COUNSEL**

Arne Werchick, Werchick & Werchick and John Graves for Plaintiffs and Appellants.

Mark G. Bonino, Michael J. Brady, Ropers, Majeski, Kohn, Bentley, Wagner & Kane and Ropers, Majeski, Kohn, Bentley & Wagner for Defendant and Respondent.

**OPINION**

**LOW, P. J.**—Failure to timely disclose an expert witness or to provide a brief statement of the expected testimony when required by Code of Civil Procedure section 2037[1] will preclude the calling of that witness. Relief from these omissions must be supported by an adequate showing of excuse and by a showing of no prejudice to an objecting party.

Plaintiffs Phyllis and Angelo Gallo brought a suit for medical negligence against defendants Peninsula Hospital and Doctors Wilson and Fisher. After Mrs. Gallo's death, she was dismissed as a party to the action, and the heirs brought a suit for wrongful death against the same defendants; the actions were consolidated for trial. Dr. Wilson was voluntarily dismissed and Dr. Fisher settled on the first day of trial. Peninsula Hospital remained as the sole defendant.

The jury returned verdicts for defendant hospital on the medical negligence and wrongful death actions. The jury found no negligence on the hospital's part and a finding on the proximate cause issue was therefore unnecessary. Plaintiffs' motion for a new trial was denied.

---

[1]All references are to the Code of Civil Procedure.

On appeal from the judgment, plaintiffs argue (1) that the trial court abused its discretion in permitting the testimony of an expert witness; that it was prejudicial error (2) to admit evidence of emergency room custom and practice; (3) to admit an American Cancer Society pamphlet; and (4) to "withhold" an exhibit from the jury. We conclude that there were no prejudicial errors and affirm.

In April 1977, upon the request of Dr. Fisher, a chest X-ray was taken of Phyllis Gallo at Peninsula Hospital. Dr. Fisher was covering for Mrs. Gallo's family physician, Dr. Alper, and he treated Mrs. Gallo, who complained of a cough and a fever, at the defendant hospital's emergency room.

Upon review of the X-ray, Dr. Fisher concluded that there were no signs of infection. However, he did not observe the cancerous lung lesion subsequently reported by the radiologist. Dr. Fisher noted "negative" with respect to the X-ray on Mrs. Gallo's outpatient form and placed a copy of the form in Dr. Alper's box. The radiologist's report noted a possible density in the lung and recommended a comparison with earlier X-rays in order to discern any malignancy.

The X-ray report was sent to Dr. Fisher, the covering physician, because his name alone appeared on the X-ray requisition slip. When Dr. Fisher received a copy of the X-ray report, he erroneously assumed that Dr. Alper had also received the report.

In January 1978, a subsequent chest X-ray revealed a cancerous lesion in Mrs. Gallo's lung in the same spot of the density; she died in July 1978 of lung cancer. Plaintiffs contend that the failure to properly and timely diagnose Mrs. Gallo's condition resulted in her death, and that the failure to do so was the result of defendant hospital's negligent practices regarding emergency room X-ray requisitions.

At trial, the court permitted Dr. Eddy to testify as an expert witness for defendant hospital on the issue of proximate cause. In substance, Dr. Eddy testified that Mrs. Gallo's cancer was incurable even if treatment had begun as of the April 1977 X-ray. Codefendant, Dr. Fisher, had disclosed Dr. Eddy as an expert witness pursuant to section 2037. Defendant hospital arranged with its codefendant, Dr. Fisher, that it would also use Dr. Eddy as its expert witness since their defense positions were the same. This arrangement was not disclosed to plaintiffs' counsel. The only reference defendant made to other expert witnesses was contained in the hospital's section 2037 list of experts, wherein it reserved the right "to call any experts identified by all parties and not called by the parties as well as experts to rebut expert testimony of any experts disclosed by other parties."

When Dr. Fisher entered into a pretrial settlement, defendant hospital expressed its intention to call Dr. Eddy as an expert witness relying on the reservations of rights clause. Over plaintiffs' objection, the trial court permitted the witness to testify after his deposition was taken. The trial court concluded that no undue prejudice would result from the witness' testimony. The trial court also permitted a nursing expert to testify for defendant over plaintiffs' objection. The court ruled that there was no undue prejudice because she had been disclosed and her testimony was permissible lay opinion testimony.

I.

Plaintiffs argue that the failure to disclose Dr. Eddy in the list of experts, as required by section 2037, prevented defendant hospital from calling him as an expert witness during trial and that the trial court prejudicially erred in allowing him to testify.

Section 2037 requires the parties to exchange lists of expert witnesses a sufficient time before trial in order to give the opposing side adequate time to prepare a defense. Section 2037.3 requires that the witness list contain a "brief narrative statement of the qualifications of such witnesses and the general substance of the testimony which the witness is expected to give." The failure to comply with these requirements prevents the party from calling that witness in his case in chief. (§ 2037.5.) However, the trial court may grant relief from such omission under certain circumstances, e.g., where it has found that such party has made a good faith effort to comply, and that the failure to list the expert resulted from mistake, inadvertence, surprise or excusable neglect, as long as it would not prejudice the objecting party. (§ 2037.6.)

■ The need for pretrial discovery as an aid to the preparation of cross-examination and rebuttal is greater with respect to the expert witness than it is in the case of an ordinary fact witness. (*Kennemur* v. *State of California* (1982) 133 Cal.App.3d 907, 916-917 [184 Cal.Rptr. 393].) ■ The notice provisions of sections 2037 through 2037.4 were not followed in this case. Instead, defendant hospital attempted to satisfy the requirements by a general clause reserving the right to call other expert witnesses listed by the other parties. This practice has gained some acceptance in the legal community. (See Kennedy, Cal. Expert Witness Guide (Cont.Ed.Bar 1983) Appendix: Sample Motions, pp. 285-286.) However, we look unfavorably upon this practice. A general "reservation of rights" to call the other party's witnesses is not the type of disclosure envisioned by the statute. It does not apprise the opposing party of the identity of the specific expert to be relied upon. Nor does it reveal the "general substance" of that testimony or its

relation to the legal theory of that particular defendant. (§ 2037.3.) For example, an expert witness may be qualified as an automotive design expert as well as an expert on reconstruction of an accident. A codefendant may disclose the expert witness to testify about design defects, while the defendant, who asserts a reservation of rights, desires to use that witness for his expertise in accident reconstruction. In this instance, opposing counsel may not be prepared to counter the testimony of such an undisclosed legal theory. This could create a trap for the unwary. Cautious attorneys would demand to take the deposition of every expert listed by all parties even if a party settles or is dismissed. This would increase the already high costs of litigation, raise legal malpractice insurance rates, and would encourage waste. Full and timely disclosure of expert witnesses encourages pretrial settlements; a salutary effect which would be lost if we were to condone the practice of adopting other parties' expert witnesses in such a wholesale manner. Such a result would reintroduce "gamesmanship" into the discovery proceedings; a result in direct conflict with the purpose "to ' "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." ' [Citations.]" (*Williamson* v. *Superior Court* (1978) 21 Cal.3d 829, 838 [148 Cal.Rptr. 39, 582 P.2d 126].)

It is of no moment that the hospital had "arranged" with its codefendant, Dr. Fisher, to also utilize Dr. Eddy as its expert. There is no evidence that this arrangement was revealed to plaintiffs. Further, codefendant, Dr. Fisher, had agreed to produce Dr. Eddy from North Carolina in San Francisco to be deposed *prior to trial* if he was going to use him as an expert witness. If we were to permit defendant hospital to adopt codefendant's expert witness list, it would only be fair to hold the hospital to the same agreement, i.e., to produce the witness before trial for deposition. If the hospital knew prior to trial that it would use Dr. Eddy, it took no timely steps to disclose that fact to plaintiffs. We find that defendant failed to comply with the requirements of sections 2037 through 2037.4.

█ Nothing we say here prevents the use of an undisclosed expert to be called for impeachment purposes. (§ 2037.5.) But " 'calling an expert witness to express an opinion contrary to that expressed by another expert witness is not the "impeachment" contemplated by section 2037.5.' " (*Kennemur* v. *State of California, supra,* 133 Cal.App.3d at p. 922.) Impeachment means calling into question the witness' veracity.

█ The trial court has discretion to grant defendant permission to call an expert witness not listed. (§ 2037.6.) Such permission is authorized so long as the court finds that the party made a good faith effort to comply with sections 2037 through 2037.4, and as the date of the exchange that

party either "(1) [w]ould not in the exercise of reasonable diligence have determined to call such witness; or [¶] (2) [f]ailed to determine to call such witness through mistake, inadvertence, surprise, or excusable neglect." (§ 2037.6.) The court must also consider the degree to which the opposing party relied upon the list of expert witnesses and whether that party will be prejudiced if the witness is called. (§ 2037.6, subd. (b); see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (Rutter Group 1984) §§ 8:1001-8:1035.)

The trial court made no record to support excusing the hospital's failure to disclose Dr. Eddy as its expert; no reasonable diligence, no inadvertence, surprise, or excusable mistake. Such a record is necessary if we are to decide whether the trial court properly exercised its discretion. The trial court permitted Dr. Eddy to testify after it concluded that his testimony would be cumulative to three other expert witnesses listed by defendant hospital and that plaintiffs would not be prejudiced as a result. The record reveals that these three other expert witnesses listed by defendant hospital were *withdrawn* prior to trial and their depositions were not taken. As a result, Dr. Eddy was the only expert witness the hospital relied upon to establish that Mrs. Gallo's lung cancer was incurable. The trial court thus had no valid basis for finding no prejudice. Plaintiffs were permitted to depose Dr. Eddy during trial and prior to his testimony only days later. However, given the technical nature of the subject matter, the fact that this witness was known to defendant long before trial and the fact that plaintiffs had only a few days to prepare for his deposition, we conclude that the trial court should not have permitted Dr. Eddy to testify.

However, any error in allowing Dr. Eddy to testify was harmless. In order for plaintiffs to prevail in both the medical negligence and wrongful death actions, they had to prove (1) that the hospital did not exercise reasonable care when it failed to send a copy of Mrs. Gallo's chest X-ray to her personal physician, and (2) that absent the delay, the cancer could have been successfully treated. The jury returned a special verdict in the wrongful death action finding that defendant hospital was *not* negligent. By finding there was no negligence, the issue of proximate cause became moot. Since Dr. Eddy testified only on the issue of causation, i.e., the likelihood that earlier detection and treatment would not have improved Mrs. Gallo's chances for survival, it cannot reasonably be said that his testimony contributed to the verdict. We find that it is not reasonably probable that absent the erroneous admission of Dr. Eddy's testimony, plaintiff would have obtained a more favorable result. (See *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 299-300 [85 Cal.Rptr. 444, 466 P.2d 996]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## II.*

. . . . . . . . . . . . . . . . . . . . . . .

The record supports the trial court's conclusion that it was not reasonably probable that a different result would have been obtained in the absence of the error. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].)

The judgment is affirmed.

King, J., and Poché, J.,† concurred.

Haning, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied March 21, 1985, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied April 17, 1985. Bird, C. J., was of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 899.
†Assigned by the Chairperson of the Judicial Council.