[No. C004588. Third Dist. May 31, 1990.]

OLA DICKISON, Plaintiff and Appellant, v.
WALTER E. HOWEN et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

1472

**COUNSEL**

Ronald H. Wecht, Walkup, Shelby, Bastian, Melodia, Kelly, Echeverria & Link for Plaintiff and Appellant.

Velma Lim, Kroloff, Belcher, Smart, Perry & Christopherson, Douglas A. Haydel, Diehl, Steinheimer, Riggio, Haydel & Mordaunt for Defendants and Respondents.

**OPINION**

MARLER, J.—After the jury returned a special verdict finding defendants Walter E. Howen, M.D., and Lodi Community Hospital not negligent in a medical malpractice case, the plaintiff, Ola Dickison, moved for a new trial. The court denied the motion. Plaintiff appeals from the judgment entered in favor of defendants, contending the trial court abused its discretion in permitting Dr. Howen to amend his list of expert witnesses, and that the judgment must be reversed because the verdict is contrary to the evidence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 1986, Mrs. Dickison, an elderly paraplegic confined to a wheelchair for over 30 years, went to the emergency room of Lodi Community Hospital. There she was seen by her longtime physician, Dr. Howen, who, after reviewing the EKG and discussing her X-ray with a radiologist, diagnosed her condition as congestive heart failure due to postinfluenza syndrome. Dr. Howen's examination disclosed that, in addition to flu symptoms, Mrs. Dickison was suffering from a productive cough and shortness of breath. She was also discolored due to a lack of oxygen and had rales—a sound the lungs make when there is fluid in them. Dr. Howen prescribed a diuretic, Lasix, and admitted Mrs. Dickison to the hospital.

Blood was taken in the emergency room for a complete blood count. The results of the blood count indicated Mrs. Dickison's white cell count was

marginally elevated, but that the band count of immature white cells was quite elevated—50 percent when the usual count is under 5 percent. Although the blood test was done in the morning, Dr. Howen did not see the results until 6 in the evening.

Dr. Howen checked on Mrs. Dickison at about 1:30 that afternoon and found her condition to be about the same. He next saw her at about 5:30; she was having difficulty breathing, but he saw no deterioration. He ordered Digitalis to strengthen her cardiac output.

Two of Mrs. Dickison's daughters arrived at the hospital in the evening. By 7 p.m. her condition had worsened. A nurse called Dr. Howen at home at 7:30 and another called at 7:45; on the second call the nurse indicated one of the daughters wished to speak with him about her mother's condition. The daughter was concerned that her mother was dying.

Dr. Howen arrived at the hospital by about 8 and called Dr. Odama, a specialist. Dr. Odama arrived within 15 or 20 minutes, and possibly sooner, and ordered Mrs. Dickison taken to the intensive care unit. Shortly thereafter Mrs. Dickison suffered a respiratory arrest and was resuscitated by an emergency procedure known as Code Blue. During the Code Blue an intravenous line was mistakenly placed in the artery instead of the vein. A blood clot formed and prevented the blood supply from reaching Mrs. Dickison's fingers, which caused gangrene and resulted in the amputation of the fingers on Mrs. Dickison's right hand.

It was later concluded that Mrs. Dickison was suffering from pneumonia, which continued to be a problem for several weeks thereafter.

Mrs. Dickison then sued Dr. Howen and Lodi Community Hospital for damages caused by their negligent treatment of her.[2]

The parties exchanged lists of expert witnesses they intended to call pursuant to Code of Civil Procedure section 2034. Dr. Howen indicated he would call Dr. Smith, who would testify Dr. Howen's treatment of Mrs. Dickison was within the standard of care and not the proximate cause of her injuries. When Dr. Smith's deposition was taken on January 19, 1988,

---

[2] The complaint did not specify the acts or omissions that constituted the negligence of the hospital or Dr. Howen. Prior to trial the hospital moved to exclude evidence of the standard of care during the Code Blue, relying on Health and Safety Code section 1317, subdivision (f), which provides immunity for actions taken by hospital rescue teams during an attempt to resuscitate a patient if they act in good faith. In *Lowry* v. *Henry Mayo Newhall Memorial Hospital* (1986) 185 Cal.App.3d 188 [229 Cal.Rptr. 620, 64 A.L.R.4th 1191], at page 195, the court held the immunity of section 1317 applies to members of a Code Blue team. The parties stipulated to the standard of care during the Code Blue, and it was not an issue at trial.

he indicated Dr. Howen breached the standard of care. On January 25 Dr. Howen moved to augment his expert witness list. Over opposition, the motion was granted subject to certain conditions. Dr. Howen augmented his list to include Dr. Benner.

At trial several experts testified as to whether the care and treatment provided by Dr. Howen and the nursing staff at the hospital met the standard of care. As is usual in a malpractice case, the testimony varied. Dr. Luce, a professor of medicine and anesthesia at the University of California at San Francisco and associate director of the intensive care unit, was very critical of Dr. Howen's treatment, faulting him for not diagnosing the pneumonia earlier, particularly once the band count was known. He also found fault with the nursing care. He testified the respiratory arrest and its consequences could have been avoided by proper care, but on cross-examination conceded that with the best possible care Mrs. Dickison might still have suffered the arrest.

Dr. Witte, a board-certified family practitioner, was also very critical of Dr. Howen. He found fault in the doctor's failure to undertake to find the cause of the congestive heart failure and testified that Mrs. Dickison should have been taken to the intensive care unit once the results of the band count were known. He also believed Dr. Howen should have treated Mrs. Dickison, such as by suctioning her, while waiting for Dr. Odama to arrive. He claimed intervention even a few minutes prior to the respiratory arrest would have prevented it.

Dr. Smith, who practiced internal medicine and was originally retained by Dr. Howen, was called by Mrs. Dickison to testify. He thought a competent physician should have suspected an infection when there was a band count of 50 percent, but indicated Dr. Howen acted appropriately in his treatment of Mrs. Dickison. He opined that even if Mrs. Dickison had been treated with antibiotics for the pneumonia that morning, the respiratory arrest would not have been prevented. He also testified as to the dangers of suctioning a patient to clear secretions. He testified that although he was critical of Dr. Howen in certain regards, he did not think those instances would have made any difference in the outcome of the case.

Dr. Benner, an associate clinical professor at the University of California at Davis with a practice in internal medicine and infectious diseases, testified on behalf of Dr. Howen. He believed Dr. Howen made a reasonable diagnosis and acted within the standard of care. He discussed the dangers of suctioning, a procedure other experts had opined should have been performed by the nurses or a doctor. He also testified the high band count shown in the blood test was a nonspecific finding, not necessarily indicating

an infection, and that he believed the other experts were placing too much emphasis on it.

By special verdict the jury found neither the hospital nor Dr. Howen negligent. A judgment on the verdict in favor of the defendants was entered on March 17, 1988.

Mrs. Dickison then moved for a new trial. The trial judge indicated he agreed with the jury that the hospital was not negligent. He disagreed with the jury's finding that Dr. Howen was not negligent, but felt there was insufficient evidence of causation and so denied the motion. Mrs. Dickison then appealed.

DISCUSSION

I

Mrs. Dickison contends the trial court erred by permitting Dr. Howen to augment his list of expert witnesses. Code of Civil Procedure section 2034, subdivision (k) grants the trial court the discretion to augment an expert witness list. ". . . The court shall grant leave to augment or amend an expert witness list or declaration only after taking into account the extent to which the opposing party has relied upon the list of expert witnesses, and after determining that any party opposing the motion will not be prejudiced in maintaining that party's action or defense on the merits, and that the moving party . . . failed to determine to call that expert witness . . . as a result of mistake, inadvertence, surprise, or excusable neglect, . . ."

■ The decision to grant relief from the failure to designate an expert witness is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of manifest abuse of that discretion. (*Sprague* v. *Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1039 [213 Cal.Rptr. 69].) ■ "In situations where the trial judge has either by express statute or by rule of policy a discretionary power to decide the issue, the exercise of discretion will not be disturbed unless it is abused. While we may have ruled differently had we heard the motion, the appellate court may not substitute its view as the proper decision." (*San Bernardino City Unified School Dist.* v. *Superior Court* (1987) 190 Cal.App.3d 233, 240-241 [235 Cal.Rptr. 356].)

■ Mrs. Dickison claims the trial court abused its discretion in granting the motion to augment because Dr. Howen did not make the showing required under subdivision (k) of section 2034. In support of his motion to augment, Dr. Howen included the declaration of his attorney which stated that he had met twice with Dr. Smith before the deposition and both times

Dr. Smith had opined the case was defensible and Dr. Howen's care and treatment was within the standard of care. Dr. Smith's testimony at the deposition was in direct conflict with these earlier opinions. At the hearing on the motion Dr. Howen's attorney told the court he was "shocked" by Dr. Smith's testimony at the deposition. He indicated that he had gone over with Dr. Smith the very points on which Dr. Smith was cross-examined at the deposition and Dr. Smith reversed himself at the deposition on opinions he had expressed to counsel earlier. Mrs. Dickison contends this showing is insufficient to constitute surprise or excusable neglect under section 2034, subdivision (k) and further that there was no basis for the court to find no prejudice to her.

We note section 2034, subdivision (*l*) is relatively new, added to the Code of Civil Procedure as part of the California Discovery Act of 1986 (Stats. 1986, ch. 1336, § 2, pp. 4756-4757), and has not yet been judicially interpreted. However, the statute is similar to its predecessor, section 2037.6.[3] Mrs. Dickison relies on a case construing the predecessor statute in arguing Dr. Howen made an insufficient showing under the statute. In *Gallo v. Peninsula Hospital* (1985) 164 Cal.App.3d 899 [211 Cal.Rptr. 27], defendant hospital wanted to call an expert witness that had been designated by another defendant who settled before trial. The hospital relied on the reservation of rights clause in its designation of expert witnesses, under which it reserved the right to call an expert designated by another party. (*Id.* at pp. 902-903.) Over objection the trial court permitted the expert to testify. (*Ibid.*) The appellate court disapproved the practice of relying on a reservation of rights clause to call additional expert witnesses; it found the practice did not give the opposing party the type of notice envisioned by the statutory scheme since it did not identify the general substance of the expert's testimony for that party or its relation to that party's theory of the case. (*Id.* at pp. 903-904.) The court further found the trial court had made no record to support excusing the hospital's failure to designate the witness earlier. There was no

---

[3] Section 2037.6 read as follows: "(a) The court may, upon such terms as may be just (including but not limited to continuing the trial for a reasonable period of time and awarding costs and litigation expenses), permit a party to call a witness, or permit a witness called by a party to testify to an opinion or data on direct examination, during the party's case in chief where such witness, is required to be, but is not, included in such party's list of expert witnesses so long as the court finds that such party has made a good faith effort to comply with Sections 2037 through 2037.3, inclusive, that he has complied with Section 2037.4, and that as of the date of exchange he:

"(1) Would not in the exercise of reasonable diligence have determined to call such witness;

"(2) Failed to determine to call such witness through mistake, inadvertence, surprise, or excusable neglect.

"(b) In making a determination under this section, the court shall take into account the extent to which the opposing party has relied upon the list of expert witnesses and will be prejudiced if the witness is called." (Stats. 1978, ch. 1069, § 1.)

evidence showing the hospital had been reasonably diligent but still failed to determine to call this witness earlier, nor was there any showing the late determination of the need to call the witness was caused by inadvertence, surprise or excusable mistake. (*Id.* at p. 905.) Further, the trial court's finding of no prejudice was flawed. The trial court found no prejudice because the expert's testimony would be cumulative; however, other witnesses who were to testify on the same point were withdrawn, leaving this expert as the only witness testifying for the hospital on the issue in question. (*Ibid.*) The court concluded the trial court erred in permitting the expert to testify, but found the error harmless under the facts of the case. (*Ibid.*)

Mrs. Dickison concedes Dr. Howen made some showing of surprise, but contends an expert's failure to stand up under cross-examination is not the type of surprise which is covered by the statute. Further, she contends Dr. Howen failed to adequately show the surprise could not have been avoided by the exercise of reasonable diligence. Dr. Howen's attorney stated that he had discussed the points that were the subject of the cross-examination with Dr. Smith and Smith's answers changed at the deposition. The trial court believed this statement and we will not question it.[4] Further, a change of testimony by a witness has been held to be sufficient to grant a new trial on the basis of surprise when the attorney has interviewed the witness to determine the testimony expected on the point in question. (*Whitfield* v. *Debrincat* (1937) 18 Cal.App.2d 730, 734 [64 P.2d 960]; but see *Wade* v. *De Bernardi* (1970) 4 Cal.App.3d 967, 971-972 [84 Cal.Rptr. 817] [damaging testimony fails to constitute surprise when attorney failed to exercise due diligence in soliciting witness's opinion on subject of testimony prior to trial].) We find no abuse of discretion in the trial court's determination that the change in Dr. Smith's testimony was a surprise which Dr. Howen could not have prevented.

Mrs. Dickison further contends there is nothing to support a finding of no prejudice; she notes that as in *Gallo* the newly designated expert would not be cumulative but instead would be the only witness to testify on behalf of the moving party on an important issue—here the key issue of whether Dr. Howen breached the standard of care in his treatment of Mrs. Dickison. ■ We do not believe the fact that the new expert is not cumulative establishes the proper standard of prejudice. First, the court in *Gallo* also

[4] In her motion for a new trial Mrs. Dickison claimed the trial court had not been fully informed of the contents of Dr. Smith's deposition and provided excerpts of the deposition to support her claim of lack of diligence by Dr. Howen's attorney. On appeal she raises this claim again, pointing to specific damaging testimony in Dr. Smith's deposition that could have been discovered by adequate preparation of the witness. Since our review is limited to determining whether the trial court abused its discretion (*Sprague* v. *Equifax, Inc., supra,* 166 Cal.App.3d at p. 1039), we shall not engage in an independent review of evidence, particularly where the evidence was not before the trial court when it ruled on the motion.

expressed a concern with the limited time in which the opposing party had to prepare for the new expert's technical testimony. (*Gallo, supra*, 164 Cal.App.3d at p. 905.) Second, Code of Civil Procedure section 2034, subdivision (*l*) requires a court to take into consideration the opposing party's reliance on the existing witness list and to determine the opposing party "will not be prejudiced in *maintaining* that party's action or defense on the merits." (Italics added.) We read this statute to evidence a concern with prejudicing the party opposing the motion by adding a new expert for which that party, due to its reliance on the previous list of experts, is not prepared and cannot be prepared in time. A party is not "prejudiced" simply because the new expert will give testimony adverse to the party.

We find support for this interpretation of prejudice in *Whitehall* v. *United States Lines, Inc.* (1986) 177 Cal.App.3d 1201 [223 Cal.Rptr. 452], at page 1210. In that case plaintiff contended the court erred in permitting defendant's expert to testify regarding a visit he made to the ship involved in the litigation three weeks after the trial began. Plaintiff claimed this testimony violated the statutory provisions regarding notice of expert witnesses and that the testimony constituted surprise. The reviewing court found no prejudice to plaintiff because the trial court offered to recess the trial to permit plaintiff's counsel to depose the witness and obtain rebuttal evidence, and plaintiff refused this offer. The court found no prejudice where plaintiff was given every opportunity to recover from any disadvantage caused by the surprise. (*Id.* at p. 1210.) A similar focus on the opposing party's ability to respond to the expert's testimony resulted in the court finding no prejudice in *Foster* v. *Gillette Co.* (1979) 100 Cal.App.3d 569 [161 Cal.Rptr. 134]. In this products liability case, plaintiff contended the court erred in permitting defendant to call an expert witness where the expert's identity and the results of his tests on the product that was the subject of the litigation had not been previously disclosed to plaintiff. The court found no prejudice resulted from any error in admitting the expert's testimony. (*Id.* at p. 579.) The expert's tests on the product were substantially the same as those performed by plaintiff's expert, with similar results. (*Ibid.*) Further, plaintiff did not seek a continuance to take the deposition of the new expert or otherwise prepare to meet his testimony. (*Id.* at p. 578.) The determination of prejudice in both these cases turned on the party's ability to respond to the new testimony. We believe the same analysis is appropriate here.

■ Mrs. Dickison's inability to recover from any disadvantage caused by permitting Dr. Howen to call a new expert did not appear to be a valid concern here; the trial court had ample grounds to find no prejudice to Mrs. Dickison in maintaining her action. The new expert, Dr. Benner, was to testify on exactly the same issue on which Dr. Smith was to testify, so counsel was prepared for the technical aspects of his testimony. Further, the

court granted the conditions requested by Mrs. Dickison's counsel to reduce the burden of preparing for a new witness. Dr. Howen was limited to one new expert, who was to be made available for deposition at the office of Mrs. Dickison's attorney with all expenses paid by Dr. Howen. Further, to the extent the information was readily available, Dr. Howen was to provide an itemization of amounts paid to the expert by Dr. Howen's insurer for consultation or testimony within the last three years and to provide the name of the plaintiff's attorney in cases where the expert testified for a Nor-Cal insured in the last three years. Significantly, Mrs. Dickison has not shown how her maintenance of the action was prejudiced by permitting Dr. Benner to testify; she does not claim her counsel had inadequate time or resources to properly cross-examine Dr. Benner or prepare a rebuttal to his testimony.

We find the trial court did not abuse its discretion by granting Dr. Howen's motion to augment his expert witness list.

## II, III*

. . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and DeCristoforo, J., concurred.

---

* See footnote, *ante*, page 1471.