[No. D016237. Fourth Dist., Div. One. Jan. 26, 1994.]

LAURENCE L. PILLSBURY, Plaintiff and Appellant, v.
WAYNE A. KARMGARD et al., Defendants and Respondents.

## COUNSEL

Laurence L. Pillsbury, in pro. per., for Plaintiff and Appellant.

Schall, Boudreau & Gore, George A. Foster, Mark A. Maasch, Neil, Dymott, Perkins, Brown & Frank, David G. Brown and Julie K. Parker for Defendants and Respondents.

Mazzarella, Dunwoody, Wilson & Petty, Mark C. Mazzarella and Frederick W. Kosmo, Jr., as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**KREMER, P. J.**—Plaintiff Laurence L. Pillsbury appeals a judgment favoring defendants Wayne A. Karmgard, L. Ross Whitney and McKusick &

Associates[1] on his complaint for malicious prosecution and deceit. Pillsbury asserts numerous errors, most involving his contention the superior court improperly determined he lacked standing to pursue those claims. We affirm the judgment.

## I

## INTRODUCTION

Pillsbury was a beneficiary of an express trust established by his father. Seeking to sell trust real property, Pillsbury and the trustee Wells Fargo Bank received purchase offers from two prospective buyers—Karmgard and Parenti. Due to the actions of Pillsbury and Wells Fargo, both prospective buyers thought they had a deal. A stalemate ensued. After Karmgard unsuccessfully sued Wells Fargo for specific performance, Wells Fargo declined to sue Karmgard, his real estate agent Whitney, or Whitney's employer McKusick & Associates for pursuing that specific performance lawsuit.[2] Pillsbury as trust beneficiary then filed this action against Karmgard and the broker defendants for malicious prosecution and deceit. Defendants challenged Pillsbury's standing to maintain those claims. The superior court concluded Pillsbury lacked standing because he did not prove the trustee acted wrongfully or negligently in declining to sue defendants. Pillsbury asserts error, contending the law required him only to show the trustee failed to sue defendants—without having to prove the additional element that the trustee's declining to sue was negligent or otherwise wrongful. We affirm the judgment.

## II

## FACTS

Pillsbury was a beneficiary of a testamentary trust established by his father. In 1987 Wells Fargo became the trustee. Under the trust, Pillsbury was to approve all sales of trust property.[3] Pillsbury regularly exercised his rights as trust consultant, beneficiary, and attorney by monitoring the trust officers, rendering opinions and suggesting methods of doing business.

---

[1] We may refer to Whitney and McKusick & Associates collectively as the broker defendants.

[2] Ultimately, Parenti received title to the property.

[3] Pillsbury's father's will provided: "I request that my executor and trustee retain the services of attorney LAURENCE L. PILLSBURY, if he is able and willing to act, for all legal matters pertaining to my estate and the trusts created by this will."

The will also provided: "As long as LAURENCE L. PILLSBURY is living and is reasonably available, and is not, in the judgment of the trustee, disabled from managing his own property, the trustee shall consult with him concerning proposed sales and investments . . . and shall obtain his approval of such sales and investments. If he withholds his approval of any

In 1987 Wells Fargo and Pillsbury decided to sell a real property asset of the trust.

On November 11, 1987, with Pillsbury's approval Wells Fargo listed the property for sale for $482,500.

On November 19, 1987, Parenti offered to buy the property for $425,000. Wells Fargo rejected the offer. After consultation with Pillsbury, Wells Fargo also rejected Parenti's second offer of $450,000.

On November 30, 1987, Wells Fargo solicited Parenti's best offer. Upon learning such offer would be $455,000, Wells Fargo with Pillsbury's consent told Parenti the trust was prepared to go forward. Wells Fargo drafted an offer for Parenti to sign.

On that same day, Karmgard viewed the property and directed his real estate agent Whitney to try to buy the property for up to $500,000. The listing agent told Whitney the property was still available. Whitney told Pillsbury and Wells Fargo that Karmgard was willing to make a higher offer. Wells Fargo told Whitney that Parenti's offer had not yet been accepted. In consultation with Pillsbury, Wells Fargo decided to wait on Parenti's offer and give Whitney time to submit Karmgard's offer. Whitney understood Karmgard's offer would be accepted if submitted at full price with a deposit.[4]

Meanwhile, Wells Fargo told Parenti the trust expected a higher offer and could not take action on Parenti's offer until December 2, 1987. Parenti signed the $455,000 offer.

On December 1, 1987, Parenti delivered a letter to Wells Fargo accusing the trustee of reneging on a promise to proceed with Parenti's $455,000 offer. On that same day Karmgard submitted his offer and the next day made the required deposit.

On December 2, 1987, Pillsbury told Parenti the trust had a full price offer it was obligated to accept if the trust did not have a binding agreement with Parenti. Pillsbury then researched the matter and concluded the trust did not have a contract with Parenti. Pillsbury also concluded the trust should not

proposal made by the trustee, notwithstanding the actual or anticipated effect thereof on the trust estate, the trustee shall not be liable or accountable in any manner for failing to act in the absence of such approval."

[4] At trial Pillsbury and Wells Fargo denied making such assurance, instead asserting they simply advised Whitney they would give him until December 2, 1987, to submit Karmgard's offer with a deposit.

accept the Karmgard offer as written because of a concern the trust could not deliver marketable title if Parenti filed suit. Pillsbury believed the Parenti offer should be rejected as too low. Parenti submitted another offer for $500 above the list price. Upon Pillsbury's approval and direction, Wells Fargo accepted Parenti's offer.

On December 3, 1987, Karmgard sold his interest in an antique collection to obtain funds to acquire the property. Meanwhile, Wells Fargo told Whitney the Parenti offer was accepted and Karmgard's offer rejected.[5]

On December 30, 1987, Karmgard sued Wells Fargo for specific performance. (San Diego Super. Ct., No. 594365.)

Declining to close escrow, Parenti in August 1988 filed a complaint in intervention in case No. 594365 seeking specific performance based on the assertedly accepted Parenti offer.

After discovery and before trial in case No. 594365, Wells Fargo's attorney Hanna recommended offering Karmgard a settlement. Wanting to preserve a malicious prosecution action against Karmgard and the broker defendants, Pillsbury objected to settlement. Wells Fargo told Pillsbury it believed a malicious prosecution lawsuit would not be warranted.

In January 1989 case No. 594365 proceeded to trial by reference under Code of Civil Procedure[6] section 638. After trial on the merits, the referee ruled there was no oral agreement by any trust representative to accept Karmgard's offer.

Meanwhile, for more than a year Wells Fargo weighed and considered the merits of a malicious prosecution action against Karmgard. Wells Fargo was faced with deciding whether it was in the trust's best interests to pursue a malicious prosecution lawsuit or instead to cut the trust's losses and decline to bring such costly action because success was at best uncertain. In early January 1989 Wells Fargo made a final determination not to file a malicious prosecution lawsuit, concluding pursuit of such action would not be in the trust's best interests.[7] In January 1989 Wells Fargo wrote the beneficiaries it did not believe a malicious prosecution suit would be appropriate and " 'any suit brought by the beneficiaries would have to be at their own expense.' "

---

[5]According to the trial court's findings in this lawsuit, the confusion existing between November 30 and December 2, 1987, was created equally by Wells Fargo's officers and Pillsbury.

[6]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[7]Pillsbury concedes the court's finding Wells Fargo in fact made a decision not to bring a malicious prosecution action "appears binding" under the substantial evidence rule.

In April 1989 in accord with the referee's decision, judgment was rendered in case No. 594365 favoring Wells Fargo against Karmgard. After the judgment became final, the Parenti escrow closed with Parenti taking title to the property.

## III

### SUPERIOR COURT PROCEEDINGS

In April 1990 Pillsbury sued Karmgard and the broker defendants for allegedly maliciously prosecuting case No. 594365 against the trust. Pillsbury also alleged the broker defendants engaged in deceit by wrongfully telling Karmgard that Karmgard had an enforceable agreement to buy the property and Parenti did not. Pillsbury alleged he brought this lawsuit in his fiduciary and individual capacities as "limited co-trustee and a beneficiary" because trustee Wells Fargo "failed and refused to file this action" and had "no intention of doing so in the future." Pillsbury sought recovery of damages the trust assertedly incurred when unable to sell the property for 20 months while title was clouded by case No. 594365. Those alleged damages included sums paid for property taxes, insurance, utilities, maintenance, security, sales commissions and income taxes, lost profits, and attorney fees and costs.[8]

Answering Pillsbury's complaint, defendants asserted his pleading did not state facts sufficient to constitute a cause of action.

In August 1991 the court bifurcated the matter for trial with the malicious prosecution and deceit claims to proceed first to a jury with the court later to hear evidence on the issue of standing.

In October 1991 Pillsbury's lawsuit came for trial. The parties stipulated case No. 594365 had been terminated in favor of trustee Wells Fargo by judgment entered after trial on the merits.

After Pillsbury presented his evidence, Karmgard sought nonsuit on various grounds including Pillsbury's asserted lack of standing. The court granted nonsuit favoring defendants, concluding Pillsbury "failed to sustain his burden of proof" that trustee Wells Fargo "negligently or wrongfully

---

[8]Pillsbury also alleged a cause of action against Wells Fargo for breaching the trust in various respects including failing and neglecting to pursue claims against defendants for malicious prosecution and deceit. Pillsbury sought replacement of Wells Fargo as trustee. Ultimately, based upon settlement between Pillsbury and Wells Fargo, the court accepted Wells Fargo's resignation as trustee, appointed a successor trustee, and dismissed Pillsbury's claims against Wells Fargo. Wells Fargo is not a party to this appeal.

declined to bring this malicious prosecution action." The court entered judgment favoring defendants. Pillsbury appeals.

## IV

### DISCUSSION

The primary issue in this appeal is whether trust beneficiary Pillsbury had standing to sue the third party defendants for torts allegedly committed against the trust. We conclude on this record the superior court properly concluded Pillsbury lacked such standing.

### A

### THE LAW

Section 367 provided in 1991: "Every action must be prosecuted in the name of the real party in interest, except as provided in Sections 369 and 374 of this code." Section 369, subdivision (a), provided in 1991: "An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him or her the persons for whose benefit the action is prosecuted. Except for a person upon whom a power of sale has been conferred pursuant to a deed of trust or mortgage, a person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."[9]

"If any person other than a real party in interest brings an action, it is subject to general demurrer. [Citations.]" (*Saks* v. *Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 427 [8 Cal.Rptr.2d 869].) "In general, the person who has the right to file suit under the substantive law is the real party in interest. [Citation.] At common law, where a cause of action is prosecuted on behalf of an express trust, the trustee is the real party in interest because the trustee has legal title to the cause. [Citations.] The corollary to this rule is that the beneficiary of a trust generally is not the real party in interest and may not sue in the name of the trust. A trust beneficiary has no legal title or ownership interest in the trust assets; his or her right to sue is ordinarily limited to the enforcement of the trust, according to its terms. [Citation.] '[B]ecause an ordinary express trust is not an entity separate from its trustees, action may not be maintained in the name of the trust. [Citation.] Thus, absent special circumstances, an action prosecuted for the benefit of a trust estate by a person other than the trustee is not brought in the name of

---

[9] Not relevant here is section 374 involving standing of an association established to manage a common interest development.

a real party in interest and is demurrable.' [Citation.]" (*Ibid.*) However, "where a trustee cannot or will not enforce a valid cause of action that the trustee *ought* to bring against a third person, a trust beneficiary may seek judicial compulsion against the trustee. In order to prevent loss of or prejudice to a claim, the beneficiary may bring an action in equity joining the third person and the trustee. [Citations.]" (*Id.* at pp. 427-428, italics added; accord, *Powers* v. *Ashton* (1975) 45 Cal.App.3d 783, 787-788 [119 Cal.Rptr. 729]; *Triplett* v. *Williams* (1969) 269 Cal.App.2d 135, 138-139 [74 Cal.Rptr. 594]; see also Rest.2d Trusts, § 282, subd. (2)[10]; 4 Scott, Trusts (4th ed. 1989) §§ 281, 282.1, pp. 21, 30-33.)

B

### Superior Court's Decision

In announcing its decision, the superior court characterized the facts bearing on the standing issue as "uncontroverted," specifically as to the underlying matter whether Wells Fargo "breached its fiduciary duty or acted negligently in deciding not to sue for malicious prosecution . . . ." In determining Wells Fargo acted properly in declining to sue defendants, the court effectively concluded Wells Fargo reasonably believed Karmgard had at least a tenable cause of action in case No. 594365. The court described this matter as "one that raises a host of debatable facts as to what went on and who said what to whom. And that's something that only a trial on the issue is going to resolve. As [the referee] so concisely put it in his opinion, that this case boiled down to one interpretation of one event as viewed from the perspective of two adversaries." Based upon the evidence, the court found Wells Fargo's decision not to pursue the malicious prosecution action "was not a violation of its fiduciary responsibility to the beneficiaries of the trust and was not made negligently."

The court stated its review of trust law indicated "in the absence of any act of negligence by the trust, by the trustee, or wrongful conduct by the trustee, a decision by the trustees to do or not to do something is binding upon the beneficiaries."[11] The court told Pillsbury: "I think a threshold question in bringing suit against [defendants] and a necessary element of your case is to

---

[10]The Restatement Second of Trusts section 282, subdivision (2), provides: "If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person." Comment e to the Restatement Second of Trusts section 282, subdivision (2), provides in part: "If the trustee does not commit a breach of trust in failing to bring an action against the third person, as for example where it is prudent under the circumstances to refrain from bringing an action (see § 192), the beneficiary cannot maintain a suit against the trustee and the third person."

[11]The court noted Pillsbury did not present any authority contradicting such interpretation.

establish your standing in the absence of the trust itself bringing the suit. . . . There must be some relationship to the trust that warrants the ability to sue them. And essentially I found that you don't have that standing, that relationship. Because the trust did not breach its fiduciary duty or act negligently or wrongfully [in declining to sue] in its considered opinion doesn't leave anything left for the beneficiary to act on."

## C

### PILLSBURY'S CONTENTIONS

#### 1

█ Pillsbury contends the superior court erred in holding he could not pursue this lawsuit unless the trustee's failure to bring the suit was improper. Pillsbury characterizes as apparently inaccurate the authority underlying defendants' motion involving standing, to wit, the Restatement Second of Trusts section 282 and 4 Scott, Trusts, *supra*, section 282.1, page 32. According to Pillsbury, in California "a beneficiary is unquestionably a real party in interest in actions against third parties, whether the nature of the action is legal or equitable." Thus, Pillsbury asserts "a beneficiary's right to sue third parties does not depend on any showing that the trustee's failure or refusal to sue was improper." █ However, after acceding at trial to litigating the case under the theory of standing advanced by defendants, Pillsbury may not properly attack that theory for the first time on appeal.

In the superior court proceedings Pillsbury did not contend the Restatement Second of Trusts and Scott on Trusts incorrectly stated the law or otherwise dispute application of such law. Indeed, at numerous times before and during trial Pillsbury effectively acknowledged he had to establish standing and such showing included proof that Wells Fargo's refusal to sue was improper. Opposing defendants' request for jury trial, Pillsbury filed points and authorities asserting the "trustee alone is ordinarily the proper party to bring action against a third person acting adversely to the trust, and the beneficiary is neither a necessary or proper party."[12] At the hearing on defendants' motion challenging his standing, Pillsbury stated "one of the elements of the malicious prosecution action and the broker count is whether the trustee failed and neglected improperly to bring the action." Pillsbury also stated he knew standing was "an element of the cause of action." Referring to Scott on Trusts, Pillsbury stated at the outset of trial "one of the hangovers appears to be, at least in 'Scott's' view, is that there still has to be a determination that the trustee should have brought this action before I as a beneficiary have standing." During argument on defendants' motion for

---

[12]Pillsbury's points and authorities cited 4 Scott, Trusts, *supra*, sections 282-282.1, pages 25-31.

nonsuit on the issue of standing Pillsbury stated: "If a beneficiary doesn't have authorization to bring the suit, then I guess the beneficiary, as I read the law, may have to show that the trustee failed or neglected in some way, either refused to bring it or failed or neglected to bring it and improperly in some sense."

In sum, Pillsbury impermissibly seeks to argue on appeal a new theory of standing contrary to the theory on which he proceeded at trial.

### 2

Further, even under the charitable assumption Pillsbury's presentation in the superior court was confused and his theory of standing is now asserted with clarity for the first time, the result would be the same. In accord with the California authorities noted above, the superior court properly required Pillsbury to establish his standing by proving Wells Fargo's failure to sue defendants was improper. (*Saks* v. *Damon Raike & Co., supra,* 7 Cal.App.4th at pp. 427-428; *Powers* v. *Ashton, supra,* 45 Cal.App.3d at pp. 787-788; *Triplett* v. *Williams, supra,* 269 Cal.App.2d at p. 138; see also Rest.2d Trusts, *supra,* § 282, com. e; 4 Scott, Trusts, *supra,* §§ 281, 282.1, pp. 21, 30-33.) Contrary to Pillsbury's contentions, California's "real party in interest" statute has not modified the common law of beneficiary standing. Cases relied upon by Pillsbury are inapposite as dealing not with beneficiaries of an express trust seeking to enforce claims on the trust's behalf against third parties but instead involving various disparate circumstances including trustees under security instruments with powers of sale or worker's compensation claims. (*Anglo-Californian Bank* v. *Cerf* (1905) 147 Cal. 384, 389 [81 P. 1077]; *Citizens' Bk.* v. *Los Angeles etc. Co.* (1900) 131 Cal. 187, 191 [63 P. 462]; *Cerf* v. *Ashley* (1886) 68 Cal. 419, 420 [9 P. 658]; *Woman's etc. Club* v. *Anglo Cal. Nat. Bk.* (1949) 90 Cal.App.2d 850, 852 [204 P.2d 411]; *Hall* v. *Southern Pacific Co.* (1919) 40 Cal.App. 39, 42 [180 P. 20]; *Bassot* v. *United Railroads* (1918) 39 Cal.App. 60, 61 [177 P. 884].)[13] In sum, the court did not err in determining beneficiary Pillsbury would lack standing to pursue this action against third party defendants unless trustee Wells Fargo's failure to bring the lawsuit was negligent, wrongful or otherwise improper.

### 3

As noted, the evidence disclosed in January 1989 Wells Fargo wrote the trust beneficiaries it did not believe a malicious prosecution suit would be appropriate and "any suit brought by the beneficiaries would have to be at

---

[13]"The similarities between a trustee of an express trust and a trustee under a deed of trust end with the name." (*Monterey S.P. Partnership* v. *W.L. Bangham, Inc.* (1989) 49 Cal.3d 454, 462 [261 Cal.Rptr. 587, 777 P.2d 623].)

their own expense." The superior court found that letter by Wells Fargo to the beneficiaries constituted neither an authorization for the beneficiaries to sue defendants nor a waiver or abandonment of such claims. Pillsbury attacks that finding, asserting the letter impliedly authorized beneficiaries to pursue a malicious prosecution lawsuit. However, Pillsbury identifies nothing in statutory or case law indicating implied authorization is an exception to the general rule that beneficiaries lack standing to pursue third party actions. In any event, Pillsbury essentially seeks to reargue on appeal the evidence presented at trial. Based upon substantial evidence the court reasonably found there was no such implied authorization. Wells Fargo's trust officers testified they did not authorize beneficiaries to sue by the January 1989 letter or otherwise. Further, by joining Wells Fargo as a defendant in this litigation, Pillsbury implicitly acknowledged that Wells Fargo had not granted him authority to sue.

4

■ Characterizing his standing as an "internal trust affair," Pillsbury contends defendants lacked any standing to litigate such issue. However, in alleging in his complaint that Wells Fargo "failed and refused to file this action," Pillsbury acknowledged the existence of a standing issue. Further, as detailed above, during the course of the superior court proceedings Pillsbury acknowledged both expressly and implicitly that standing was an element of his case. He may not now claim otherwise.

5

■ Characterizing defendants' nonsuit motion challenging his standing as an objection to nonjoinder or misjoinder of parties plaintiff, Pillsbury contends such motion constituted an impermissibly tardy plea in abatement and was thus waived.[14] However, lack of standing is not a plea in abatement. (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].) In making such contention, Pillsbury confuses lack of capacity to sue with lack of right to sue. "[T]he question of standing to sue is different from that of capacity. Incapacity is merely a legal disability, such as infancy or insanity, which deprives a party of the right to come into court. The right to relief, on the other hand, goes to the existence of a cause of action." (*Ibid.*; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading § 920, p. 357.)[15]

As noted, if "any person other than a real party in interest brings an action, it is subject to general demurrer. [Citations.]" (*Saks* v. *Damon Raike & Co.*,

[14]We note Pillsbury did not object in the superior court that defendants' invocation of the standing issue was tardy.

[15]"There is an important distinction, sometimes overlooked, between lack of capacity to sue and lack of right to sue. The plaintiff, e.g., may be an adult individual, or a corporation organized in full compliance with statutory requirements, or a representative fully qualified to bring actions on behalf of his principal or beneficiary, and in all of these situations he is

*supra*, 7 Cal.App.4th at p. 427; *Powers* v. *Ashton*, *supra*, 45 Cal.App.3d at pp. 787-788.) However, although lack of standing may be raised by demurrer, failure to do so is not fatal. "Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a cause of action will be sustained. [Citation.] This objection is not waived by failure to raise it by demurrer or answer, and may be raised at any point in the proceedings. [Citation.]" (*Parker* v. *Bowron*, *supra*, 40 Cal.2d at p. 351.) " 'The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant [citation].' [Citation.]" (*Killian* v. *Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877].) "Lack of standing is not waived by the failure to raise it in the trial court; it may be raised at any point in the proceedings. [Citations.]" (*Ibid.*)

Further, unlike the situation in *Powers* v. *Ashton*, *supra*, 45 Cal.App.3d 783, Pillsbury's lack of standing did not necessarily appear from the face of his complaint. Instead, Pillsbury's pleading sought to allege standing by asserting he brought this lawsuit because trustee Wells Fargo "failed and refused to file this action" and had "no intention of doing so in the future." Later the pleading also alleged Wells Fargo breached the trust by various actions including failing and neglecting to pursue claims against defendants for malicious prosecution and deceit. Under the rule of liberal construction, it is not unlikely Pillsbury's complaint might survive a general demurrer. (*Pulver* v. *Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [227 Cal.Rptr. 491].)

Moreover, by asserting that Pillsbury's complaint failed to allege facts sufficient to constitute a cause of action, defendants' answers essentially placed in issue whether Pillsbury had standing. Resolution of the standing issue here required a factual determination involving the propriety of trustee Wells Fargo's declining to sue defendants and thus could not be decided on demurrer. Instead, the court effectively tried the standing issue as a special defense. (§ 597.)

In sum, defendants properly raised the issue of Pillsbury's standing by motion for nonsuit.

6

On June 19, 1991, Wells Fargo filed a resignation and petition for order accepting its resignation and appointing a successor trustee. Wells Fargo's

---

possessed of legal capacity to sue. But if, under the real party in interest doctrine, he is not the owner of or person entitled to assert this particular cause of action, his complaint fails to assert a breach of *his* primary right and the defect is raised by a general demurrer." (5 Witkin, Cal. Procedure, *supra*, Pleading § 920, p. 357, italics in original.)

petition was calendared for hearing on July 19, 1991, before the scheduled trial date. Pillsbury filed a response urging the court to accept Wells Fargo's resignation "forthwith" and appoint San Diego Trust and Savings Bank as successor. Although there was no objection to Wells Fargo's petition, the court on its own motion ordered the hearing continued. Ultimately, on November 21, 1991, after completion of trial, the court accepted Wells Fargo's resignation.

■ Pillsbury contends the superior court erred in not accepting Wells Fargo's resignation or appointing a successor trustee before trial. Citing Probate Code sections 15640, subdivision (d), and 15660, subdivision (a), Pillsbury contends acceptance of the original resignation and appointment of a successor trustee were mandatory. Asserting a successor trustee could have authorized his suit against defendants, intervened, or joined the proceedings, Pillsbury attacks as prejudicial the continuance until after completion of trial.

However, such contention is speculation. Pillsbury points to nothing in the record demonstrating he could have convinced a successor trustee to prosecute the action against defendants. Further, nothing in the record suggests Pillsbury objected to the superior court's decision to defer ruling on Wells Fargo's motion for replacement as trustee or otherwise asserted such delay was prejudicial because a successor trustee stood ready to pursue the litigation against defendants.

7

■ Pillsbury contends the superior court erred in advancing the standing issue from the second phase of trial to the first phase after trial was already well under way. Pillsbury asserts the change in order of proof at a time well into trial was prejudicial as requiring review of various disputes about the relevancy of evidence and a determination about "which disputes should be reopened because of the existence of an issue not theretofore known to be ripe." However, Pillsbury concedes the court had discretion to determine the order of proof and its ruling will not be disturbed absent abuse of such discretion. (*Dickison* v. *Howen* (1990) 220 Cal.App.3d 1471, 1476 [270 Cal.Rptr. 188]; see also § 598; Evid. Code, § 320.) Pillsbury has not demonstrated such abuse of discretion. On the contrary, the record shows the court acted within its discretion in shifting the standing issue to the first phase of trial because the issues of both phases increasingly overlapped. Further, the record amply discloses any change in the order of proof involving standing did not surprise or prejudice Pillsbury.

The allegations of Pillsbury's complaint acknowledged the existence of a standing issue. The issue of standing was raised repeatedly during the

proceedings. Defendants filed a formal motion challenging Pillsbury's standing.[16] The law was raised and argued. On October 16, 1991, at the outset of trial the court noted the issues would likely overlap both phases of trial. By October 24, 1991—the fifth day of trial—the overlap had become increasingly substantial and the court's statements alerted Pillsbury to the probability the issue of standing might be moved into the first phase. Ultimately, on October 30, 1991, upon concluding the issue of probable cause to bring case No. 594365 and the issue of standing involved similar analyses of essentially the same evidence, the court permitted the parties to introduce the remainder of their evidence on standing. Before argument on defendants' nonsuit motion based on Pillsbury's lack of standing, the court confirmed with Pillsbury he had completed his evidentiary presentation.

In sum, the court acted within its statutory discretion in determining the standing issue after the first phase of trial. Further, the court afforded Pillsbury ample opportunity to present his evidence on the issue of standing. The court properly concluded Pillsbury's claim of surprise was "very difficult to believe." This record suggests no justification for any lack of preparation by Pillsbury on the issue of standing.

8

Pillsbury asked the superior court to take judicial notice of the judgment in case No. 594365 including the referee's attached statement of decision. Pillsbury argued the judgment was admissible to prove the truth of the matters asserted in the judgment. The court declined to admit the judgment into evidence.

Pillsbury contends the court erred in not judicially noticing the judgment in case No. 594365 and in not applying collateral estoppel to establish conclusively the falsity of Whitney's assertion that on November 30, 1987, Pillsbury stated the property would be Karmgard's if he submitted a full price offer.[17] However, the court properly declined to admit the statement of decision into evidence. Since Whitney and McKusick & Associates were not parties to case No. 594365, the superior court reasonably concluded it would be unfair to apply the doctrine of collateral estoppel based on a finding in the statement of decision about the falsity of Whitney's assertion. Noting the parties had stipulated case No. 594365 was terminated

---

[16]In August 1991 the court deferred ruling on the motion challenging Pillsbury's standing.

[17]This record does not contain the statement of decision from case No. 594365. According to Pillsbury, the referee's statement of decision provided: "The Referee finds that Leon Whitney's version of any such conversation is either mistaken or untrue and Lawrence Pillsbury never made any representation or statement to the effect, 'deliver your buyer's offer with deposit and the property will be yours.' "

in favor of Wells Fargo by judgment entered after trial on the merits, the court also reasonably stated it found nothing probative in that judgment beyond matters already admitted under that stipulation. Further, without merit is Pillsbury's assertion that exclusion of the statement of decision was prejudicial as precluding effective impeachment of the testimony of Hanna and Wells Fargo employees that the statement of decision was a substantial factor in Wells Fargo's decision not to sue. The record discloses in determining the standing issue the court read the judgment in case No. 594365 for the limited purpose of considering whether Wells Fargo relied on the judgment and the attached statement of the referee in deciding not to pursue a malicious prosecution action.

Moreover, whether Pillsbury ever told Whitney the property would be Karmgard's upon submission of a full price offer was not an issue in this case. Instead, the issue was whether Karmgard believed he had a contract. Noting the referee did not decide whether Whitney's statement about Pillsbury's asserted promise was untruthful or simply mistaken, the court stated a finding Whitney was only mistaken would support the tenability of Karmgard's claim. Pillsbury agreed. Thus, it was speculative at best whether the judgment and attached statement of decision in case No. 594365 would have a significant collateral estoppel effect on any issue bearing on Wells Fargo's alleged breach of trust. Even if the court erred in excluding the judgment from evidence, it is not reasonably likely its admission would have resulted in a different decision on the standing issue.

9

■ The superior court ruled Pillsbury had the burden of proof on the issue of his standing. Pillsbury contends the court erred in holding he had such burden of proof. According to Pillsbury, once he established Wells Fargo owed him a fiduciary duty and challenged Wells Fargo's performance of that duty, the burden shifted to Wells Fargo to show the obligation was discharged.

However, even if Wells Fargo had the burden of proof on Pillsbury's claim it breached the fiduciary duty of a trustee, Wells Fargo was not a party to Pillsbury's claims against defendants. In the lawsuit between Pillsbury and defendants, the burden to prove standing lay with plaintiff. As noted, the issue of standing went to the existence of Pillsbury's causes of action against defendants. (*Parker* v. *Bowron*, *supra*, 40 Cal.2d at p. 351; *Killian* v. *Millard*, *supra*, 228 Cal.App.3d at p. 1605.) Further, at trial Pillsbury acknowledged standing was an element of his claims against defendants.

10

■ Pillsbury contends the superior court erred in holding Wells Fargo discharged its duty as trustee. Specifically, Pillsbury contends in determining whether to pursue a malicious prosecution action Wells Fargo breached its duty by (1) not obtaining a deposition or statement from the purported buyer under Karmgard's antique-sale agreement bearing on the good faith of such agreement; (2) not considering the potential liability of Whitney; and (3) not informing Pillsbury or other beneficiaries that Wells Fargo intended to abandon the claims in reliance on an opinion of counsel advising against suit.[18] However, substantial evidence supports the court's conclusion Pillsbury lacked standing because Wells Fargo's declining to sue was not negligent or otherwise wrongful. Essentially, Pillsbury improperly seeks reweighing on appeal of the evidence at trial.

Probate Code section 16242 provides: "The trustee has the power to do any of the following: [¶] (a) Pay or contest any claim. [¶] (b) Settle a claim by or against the trust by compromise, arbitration, or otherwise. [¶] (c) Release, in whole or in part, any claim belonging to the trust."

Probate Code section 16249 at relevant times provided: "The trustee has the power to prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties."

The superior court recited at length the evidence underlying its finding Wells Fargo's decision not to pursue defendants was not negligent or wrongful. Specifically, the court found: Wells Fargo made its decision based on its knowledge of the facts surrounding the sale of the trust property; Pillsbury's and Wells Fargo's handling of the two competing offers made it reasonable for both prospective buyers to believe they had purchase contracts; to assist in determining whether to sue for malicious prosecution, Wells Fargo's trust officer sat through two days of testimony in case No. 594365 and could judge the witnesses' credibility; Wells Fargo sought and obtained an opinion from "trusted and experienced" counsel; and based upon the facts known to them and reasonable inferences when faced with a questionable claim costly to pursue, Wells Fargo's trust officers weighed the risks and benefits in concluding pursuing the litigation was not in the trust's best interest. In sum, Wells Fargo considered information drawn from its own involvement from November 30, 1987, until judgment in case No. 594365 including evidence developed during discovery and trial of that

---

[18]Pillsbury contends the trustor intended the trustee to obtain Pillsbury's consent to abandon claims.

lawsuit. Such evidence amply supported the court's finding Wells Fargo did not violate its responsibility to trust beneficiaries in declining to sue.

Although now asserting Wells Fargo should have interviewed the purported buyer under Karmgard's antique-sale agreement, the record shows Pillsbury did not ask Wells Fargo to conduct further investigation into the underlying facts of case No. 594365 or request that Wells Fargo hire attorneys to evaluate whether to bring suit. The superior court also expressly noted Pillsbury never disclosed to Wells Fargo any suspicions about the antique-sale agreement. Further, in any event, deposition testimony from the purported antique buyer was admitted at trial in this lawsuit, contradicted by Karmgard and his former counsel, and impeached. Such possibility of conflicting testimony and the resulting questionable nature of the case was one of the risks properly considered by Wells Fargo in determining whether to sue.

Similarly, there was no evidence Pillsbury ever asked Wells Fargo to consider a claim against Whitney. In any event, Whitney's conduct was necessarily a factor in considering a claim against Karmgard. Moreover, as the court expressly found, despite knowing Wells Fargo was considering whether to bring suit Pillsbury did not present Wells Fargo with any additional information supporting a decision to sue. Finally, whether any additional information would have altered Wells Fargo's decision is speculation.

In sum, the superior court reasonably found Wells Fargo exercised proper business judgment in declining to bring an action against defendants. Thus, because Pillsbury did not prove Wells Fargo acted improperly in declining to sue, the court properly found Pillsbury lacked standing to pursue this lawsuit.

## 11

Pillsbury contends the court erred in applying a mistaken standard of time, to wit, considering only the facts known to Wells Fargo when it decided not to sue instead of considering all facts known at trial. However, the court properly evaluated Wells Fargo's decision as of the time the bank made its decision. Probate Code section 16040, subdivision (a), provides: "The trustee shall administer the trust with the care, skill, prudence, and diligence *under the circumstances then prevailing* that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument." (Italics added.)

## V

### KARMGARD'S REQUEST FOR SANCTIONS

Karmgard seeks attorney fees from Pillsbury as sanctions for an assertedly frivolous appeal. Characterizing Pillsbury's appeal as "totally devoid of merit," Karmgard contends the essence of the appeal was Pillsbury's claim the court erred in applying the law set forth in section 282 of the Restatement Second of Trusts despite Pillsbury himself having advised the court such law was applicable. However, we decline to characterize this appeal as frivolous.

### DISPOSITION

The judgment is affirmed. Respondent Karmgard's request for sanctions for a frivolous appeal is denied. Respondents are entitled to costs on appeal.

Froehlich, J., and Nares, J., concurred.

A petition for a rehearing was denied February 14, 1994, and appellant's petition for review by the Supreme Court was denied April 21, 1994.