IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 36980

JOSE L. AGUILAR, JR., individually, as the personal representative of the Estate of Jose F. Aguilar, deceased and the Estate of Maria A. Aguilar, deceased, JOSE L. AGUILAR, JR. and JENNIFER AGUILAR, as the legal guardian of LORENA AGUILAR, a minor; and GUADALUPE MARIA AGUILAR  and ALEJANDRO AGUILAR, heirs of Maria A. Aguilar, deceased.

Plaintiffs-Respondents,

v.

NATHAN COONROD, M.D., and PRIMARY HEALTH CARE CENTER, an Idaho corporation,

Defendants-Appellants,

and

ANDREW CHAI, M.D, STEVEN R. NEWMAN, M.D., MITCHELL LONG, D.O., and JOHN AND JANE DOES I through X, employees of one or more of the defendants,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2011 Term

2011 Opinion No. 99

Filed:  September 14, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. Gregory M. Culet, District Judge.

District court decision denying motion for new trial, <u>affirmed.</u>

Powers, Tolman, PLLC, Boise, for appellants.  Steven J. Hippler and David C. Frederick argued.

Comstock & Bush, Boise, for respondents.  John A. Bush argued.

BURDICK, Chief Justice

This case comes before this Court on appeal from a jury verdict entered in a wrongful death case in favor of Jose Aguilar, Guadalupe Aguilar, Alejandro Aguilar, Lorena Aguilar and Jose Aguilar, Jr. (collectively, "the Aguilars") against Dr. Nathan Coonrod, his employer Primary Health Care Center (Primary Health) and employees of Primary Health (collectively, hereinafter "Dr. Coonrod"). On appeal Dr. Coonrod asserts that the district court abused its discretion in barring him from questioning the Aguilars' expert, Dr. Blaylock, about his opinion as to the professional negligence of Dr. Chai and Dr. Long (two previous defendants who settled or were dismissed prior to trial) in their treatment of Maria Aguilar (Maria), either on cross-examination or during his case in chief. Dr. Coonrod alleges that the district court also abused its discretion in forbidding him to read portions of Dr. Blaylock's deposition into the record. Finally, Dr. Coonrod alleges that the district court erred in interpreting the statutory cap on non-economic damages, I.C. § 6-1603, as applying to each of the Aguilars individually instead of collectively. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2003, Maria saw Dr. Atup-Leavitt at Primary Health due to shortness of breath, nausea and dizziness, and was diagnosed with anemia. On April 26, 2003, Maria was seen by Dr. Blahd at the West Valley Medical Center emergency room, and was again discharged with a diagnosis of anemia. Dr. Coonrod first examined Maria on April 28, 2003, at Primary Health, where she reported shortness of breath and a rapid pulse. Between April 28 and Maria's death on June 4, 2003, Maria saw Dr. Coonrod an additional six times, the last time was on the morning of the day she died. During this time, Maria was also seen by: Dr. Gibson (a gastroenterologist) twice; Dr. Long (a doctor at Mercy Medical Center's emergency room); Dr. Chai (a cardiologist at Mercy Medical Center); Dr. Thomas (a doctor at Mercy Medical Center's emergency room); Dr. Field (a cardiologist at Mercy Medical Center); and Dr. Newman (a doctor in West Valley Medical Center's emergency room). Maria was determined to have died of a pulmonary embolus; a clot had formed at the arch of her pulmonary artery, blocking the flow of blood from the right chamber of her heart into her lungs.

On June 2, 2005, the Aguilars filed suit against Drs. Chai, Newman, Long, Coonrod and Atup-Leavitt, along with their employers, alleging that the defendants breached the relevant standards of medical care in failing to diagnose Maria's condition and that this negligence resulted in her death. On December 18, 2006, the Aguilars filed an amended complaint. Dr. Atup-Leavitt, Mercy Medical Center and West Valley Medical Center were dismissed relatively early in the litigation process. Dr. Chai was dismissed from the case on June 2, 2009. Dr. Long settled with the Aguilars, and was dismissed from the case on June 15, 2009. When trial began the only remaining defendants were Dr. Newman, Dr. Coonrod and Primary Health.

On December 29, 2006, Dr. Coonrod filed an answer to the Aguilars' amended complaint raising, *inter alia*, the affirmative defense of comparative negligence. On January 15, 2008, the Aguilars made their first expert witness disclosure, disclosing, amongst others, Dr. Blaylock, and noting that he was expected to testify that Dr. Long, Dr. Chai, Dr. Coonrod and Dr. Newman violated the standard of care for their respective practice areas and that these violations were a substantial factor in Maria's death. Through numerous supplementations of their expert witness disclosures, the Aguilars consistently indicated that Dr. Blaylock was expected to testify that these four doctors were negligent.

On February 27, 2009, the Aguilars made a motion *in limine* seeking, *inter alia*, to preclude Dr. Coonrod from making any reference to any defendant who settled or was dismissed from the case prior to trial. The district court heard argument on that motion on April 22, 2009, and Dr. Coonrod argued that he should be permitted to question Dr. Blaylock regarding his previously disclosed opinions as to the negligence of any doctor who was dismissed or settled prior to trial. At that time the district court specifically considered whether Dr. Coonrod could question Dr. Blaylock to establish negligence on the part of Dr. Long. The court declined to make a ruling at that time, inviting further submission of authority by both parties. During trial the court again heard argument on this issue, outside the presence of the jury, and ruled that Dr. Coonrod could not call Dr. Blaylock in his case in chief, on the basis that Dr. Coonrod had not adequately disclosed Dr. Blaylock as an expert he intended to call at trial. However, the court declined to make a final determination as to whether Dr. Coonrod could question Dr. Blaylock on

3

cross-examination as to his opinion of the standard of care provided by Dr. Long and Dr. Chai. The court deferred that ruling, finding that it would necessarily depend on what was within the scope of direct examination and what seemed like appropriate impeachment questioning.

The district court allowed Dr. Coonrod to question Dr. Blaylock outside the presence of the jury, on April 29, 2009, to make an offer of proof in the record as to what he would have asked Dr. Blaylock before the jury had he been given the opportunity. This offer of proof was supplemented with additional questioning outside the presence of the jury on the morning of April 30, 2009.

The jury returned a verdict against Dr. Coonrod on May 13, 2009, and a judgment was entered on May 20, 2009. On May 28, 2009, Dr. Coonrod filed a motion for a new trial on the basis that it was an abuse of discretion and/or error in law to bar him from asking Dr. Blaylock his opinion as to the negligence of Dr. Long and Dr. Chai. Dr. Coonrod also argued that it was an abuse of discretion and/or error in law to list each plaintiff individually, rather than collectively, on the jury form for noneconomic damages. The jury found that Dr. Newman had not breached the standard of care, and he settled with the Aguilars following the conclusion of trial and was dismissed on June 25, 2009. The district court heard oral argument on Dr. Coonrod's May 28 motion on July 1, 2009, and denied that motion in a memorandum decision entered on August 25, 2009. An amended judgment was entered on September 19, 2009, and Dr. Coonrod filed his notice of appeal with this Court on September 29, 2009.

## II. ANALYSIS

**A. The district court did not abuse its discretion in refusing to allow Dr. Coonrod to cross-examine Dr. Blaylock, or present evidence in its case in chief, about Dr. Blaylock's deposition testimony that Dr. Long and Dr. Chai had acted negligently in their treatment of Maria, breaching the standard of care, and that negligent treatment was a substantial factor in Maria's death.**

Dr. Coonrod argues that the district court erred in finding that Dr. Coonrod could not cross-examine Dr. Blaylock (the Aguilars' expert witness) about his opinion offered during his deposition that two other doctors, Long and Chai, also breached the standard of care in failing to diagnose Maria, and that five other doctors who had seen Maria during the relevant period had not breached the standard of care. The court likewise forbade Dr. Coonrod from questioning Dr. Blaylock about his deposition testimony

4

during Dr. Coonrod's case in chief. Dr. Coonrod contends that the district court erroneously found that *White v. Mock*, 140 Idaho 882, 104 P.3d 356 (2004), compelled it to deny this line of questioning on the basis that Dr. Coonrod's expert disclosures were too general.

1. Standard of Review

As this Court stated in *White v. Mock*:

The Court reviews a trial court's decision admitting or excluding evidence, including the testimony of expert witnesses, under the abuse of discretion standard. The test for determining whether the district court abused its discretion is: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason.

140 Idaho at 888, 104 P.3d at 362 (internal citations omitted). Typically, where the disclosure requirements of I.R.C.P. 26 are not met, an improperly disclosed expert will be excluded from testifying. *Id.* The decision to grant or deny a motion for a new trial is likewise reviewed by this Court under an abuse of discretion standard. *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, __, 245 P.3d 992, 999 (2010). Where an incorrect ruling was made regarding evidence, a new trial is only merited if the error affects a party's substantial right. *Clark v. Klein*, 137 Idaho 154, 156, 45 P.3d 810, 812 (2002).

2. The district court did not abuse its discretion in barring Dr. Coonrod from calling Dr. Blaylock during his case in chief.

*i. The district court did not abuse its discretion in barring Dr. Coonrod from calling Dr. Blaylock during his case in chief, based on his finding that Dr. Coonrod had provided inadequate notice of his intent to call Dr. Blaylock, pursuant to I.R.C.P. 26(b)(4)(A)(i).*

Here, the first and third parts of the abuse of discretion test were clearly met by the district court; it recognized that the decision whether or not to allow evidence to be presented to the jury was one of discretion, and it exercised considerable reason in reaching that decision. Our only remaining inquiry is whether the court acted consistent with the applicable legal standards. The court noted that it was barring Dr. Coonrod from calling Dr. Blaylock during his case in chief because Dr. Coonrod had not properly

5

disclosed Dr. Blaylock as an expert witness he expected to call at trial under I.R.C.P. 26(b)(4)(A).

Idaho Rule of Civil Procedure 26(b)(4) provides, *inter alia*:

Discovery of facts known and opinions held by experts, expected to testify, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained by interrogatory and/or deposition, including:

(A) (i) A complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; any qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

It is clear that Dr. Coonrod's disclosures did not comply with the requirements of I.R.C.P. 26(b)(4)(A)(i).

The Aguilars sent Dr. Coonrod several interrogatories pertaining to both his affirmative defense and his retained experts, requesting information regarding which other doctors Dr. Coonrod alleged had breached the standard of care and the experts that would testify as such. Although Dr. Coonrod disclosed numerous experts, he never identified an expert he intended to call to establish his affirmative defense that other medical providers had violated the standard of care. The most that Dr. Coonrod did was claim a general reservation of rights to call the experts disclosed by the Aguilars, which this Court specifically found to be insufficient to comply with the requirements of I.R.C.P. 26(b)(4). *White*, 140 Idaho at 889, 104 P.3d at 363. *See also Gallo v. Peninsula Hospital*, 211 Cal. Rptr. 27, 30–31 (Cal. Ct. App. 1985).

These are the disclosures Dr. Coonrod offered, as they pertain to Dr. Blaylock: (1) on April 22, 2008, in his expert witness disclosure, "RESERVATIONS Defendants reserve the right to call any and all expert witnesses disclosed by Plaintiffs . . . ."; (2) in a supplemental disclosure filed October 17, 2008, "Any and all individuals identified as an expert witness by plaintiff in their present and future discovery answers or formal disclosure documents. Any and all individuals called to testify as an expert witness by plaintiffs." Clearly these disclosures do not offer sufficient detail to comply with the requirements of the Idaho Rules of Civil Procedure.

6

Dr. Coonrod did offer some additional disclosures regarding Dr. Blaylock, in response to interrogatories, though these responses were not received until after: (1) the discovery deadline had passed, and (2) the Aguilars filed a motion in limine seeking to preclude Dr. Coonrod from offering the affirmative defense of comparative fault due to his failure to disclose any experts who would be testifying to such. The disclosures were as follows: (1) In a supplemental answer to interrogatory no. 3 of the Aguilars, which asks for disclosure of those expected to testify along with the general nature of the facts to which they will testify, on March 9, 2009,[1] Dr. Coonrod included "Paul Blaylock, MD: It is anticipated that Dr. Blaylock will testify consistent with his opinions previously disclosed."; (2) In supplemental response to an interrogatory asking for disclosure of experts and the subject matter, facts and opinions as to which they will testify, Dr. Coonrod responded, in relevant part: "[P]lease see Plaintiffs' Expert Witness Disclosures (original disclosure and all supplements thereto) and Plaintiffs' Rebuttal Expert Witness Disclosures, which are incorporated by reference as if fully set forth herein. To the extent any other defendant in this action is dismissed prior to trial, this defendant reserves the right to call or cross-examine plaintiffs' expert witnesses at trial."; and (3) In response to an interrogatory concerning Dr. Coonrod's affirmative defense of comparative fault, he again identifies the Aguilars' expert witness disclosures and states that they are incorporated by reference, and specifically directs the Aguilars to the deposition testimony of Dr. Blaylock, and this same information is provided in response to several more interrogatories.

The final reference made to Dr. Blaylock by Dr. Coonrod was filed on April 27, 2009, in his supplemental trial brief: "It is the defendants' intent to utilize plaintiffs' expert witnesses to show that non-parties were negligent in the above-entitled case. Specifically, defendants propose to call plaintiffs' expert witness, Dr. Paul Blaylock, M.D., to establish the negligence of the non-parties in this case." Even if all of the above had been timely filed, and properly included as expert disclosures, it would have been insufficient to meet the standard articulated in I.R.C.P. 26(b)(4). Therefore, we hold that the district court's decision was consistent with the applicable legal standards and did not

---

[1] It is noted by the parties that this document was provided to the Aguilars on March 3, 2009, though it wasn't officially filed until March 9. The stipulated discovery deadline was March 1, 2009.

constitute an abuse of discretion. Dr. Coonrod was properly barred from calling Dr. Blaylock in his case in chief.

Where a medical-care-provider defendant wishes to plead an affirmative defense of comparative negligence, it is incumbent upon them to obtain an expert to testify as to the negligence of other medical-care providers. Best policy would be for such a defendant to retain their own expert, but in the event they wish to attempt to meet their burden of proof by calling the expert of their opponent, they must fully comply with the requirements of the Idaho Rules of Evidence. A defendant must be just as specific in their disclosures of an opponent's retained expert, whom the defendant intends to call, as they would be if disclosing their own independently retained expert. Without such disclosures, and adequate interrogatory responses, it is difficult for a plaintiff to properly prepare its strategy for countering a comparative negligence affirmative defense.

Here, Dr. Coonrod had the burden of proof to offer expert testimony that another medical-care provider was negligent, in order to establish his affirmative defense of comparative negligence. He chose not to engage an expert to testify on that issue, and failed to provide responses to interrogatories that timely notified the Aguilars which medical-care providers Dr. Coonrod was alleging had violated the standard of care. A substantial policy consideration underlying the expert witness disclosure requirements of the rules of evidence is to provide each party with fair notice and an opportunity to prepare for trial. Dr. Coonrod's general reservation of the right to call "any expert" or his blanket and generic notice that he might call each expert (individually named) "consistent with his opinions previously disclosed" did not fairly provide the Aguilars with an opportunity to prepare their case. Dr. Coonrod made the tactical decision not to retain an expert on the issue of comparative negligence, and he must deal with the consequences of that decision.

> *ii. Whether the district court abused its discretion in failing to allow Dr. Coonrod to call Dr. Blaylock during his case in chief on other grounds.*

Aside from his failure to properly disclose Dr. Blaylock as an expert he expected to call at trial under the Idaho Rules of Civil Procedure, Dr. Coonrod argued that he still should have been permitted to read Dr. Blaylock's deposition into the record himself under I.R.C.P. 32(a)(3)(B). Idaho Rule of Civil Procedure 32(a) is titled "Use of depositions" and provides, in relevant part:

8

> At trial or upon the hearing of a motion for an interlocutory proceeding, any part or all of a deposition, *so far as admissible under the rules of evidence applied as though the witness were then present and testifying*, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: . . .
>
> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state of Idaho, unless it appears that the absence of the witness was procured by the party offering the deposition . . . .

(Emphasis added). Dr. Coonrod argues that because Dr. Blaylock resides outside of Idaho and was more than 100 miles away from the locus of the trial, following Dr Blaylock's testimony at that trial, Dr. Coonrod should have been permitted to read Dr. Blaylock's deposition into the record. Idaho Rule of Civil Procedure 32 makes the following condition for the use of any deposition testimony: "so far as admissible under the rules of evidence applied as though the witness were then present and testifying". Here Dr. Blaylock was present, and did testify, and the court found that Dr. Coonrod could not properly call him to ask about his deposition testimony. Thus, having already determined that the rules of civil procedure precluded Dr. Coonrod from calling Dr. Blaylock to ask him about his opinion as to the negligence of Dr. Chai and Dr. Long, those rules would also preclude reading the deposition into the record for the same purpose. It is evident from the structure of the rule that it is anticipated that a deposition of a potential witness will be read into the record only where that potential witness does not actually testify.

Dr. Coonrod also argues that Dr. Blaylock's testimony should have been permitted as it was necessary to allocate fault fairly and avoid a duplicate recovery. Dr. Coonrod points out that without expert testimony opining that another party was negligent, he could not have anyone else placed on the special verdict form for comparative negligence purposes, *see* I.C. §§ 6-1012, 6-1013, and that there is a general policy to have all potentially responsible parties included on the special verdict form. *See Pocatello Indus. Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980). This argument lacks merit. It was Dr. Coonrod's burden to proffer expert testimony that other healthcare providers were negligent, if he wished for those providers to be included on the special verdict form.

9

3.  The district court did not abuse its discretion in barring Dr. Coonrod from questioning Dr. Blaylock at cross-examination as to his opinion that Dr. Long and Dr. Chai had breached the standard of care.

Dr. Coonrod argues that he should have been permitted to question Dr. Blaylock at cross-examination regarding Dr. Blaylock's previously expressed belief that Dr. Chai and Dr. Long had breached the standard of care, on the basis that such cross-examination would not have exceeded the scope of direct examination, and that it was relevant information for impeachment.  Dr. Coonrod asserts that the district court abused its discretion in barring him from cross-examining Dr. Blaylock on these issues.  We disagree.

The district court declined to rule as to whether Dr. Coonrod could cross-examine Dr. Blaylock on this subject matter during the pretrial hearing.  During trial, on the morning of April 29, 2009, immediately prior to Dr. Blaylock's testimony, the district court again considered the issue, and again deferred making a final ruling as to what would be permitted on cross-examination, noting that it would necessarily depend upon what was brought up during direct examination and what seemed like appropriate impeachment questioning.  At the end of cross-examination, Dr. Coonrod's counsel made an offer of proof into the record, outside the presence of the jury, to show what he would have asked Dr. Blaylock if he had been given the opportunity to do so.

Idaho Rule of Evidence 611(b) governs the scope of cross-examination, and provides that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

In the offer of proof Dr. Blaylock testified that he had previously opined that Dr. Chai and Dr. Long had each breached the standard of care.  Dr. Blaylock had not been questioned as to his opinion of the conduct of Dr. Chai or Dr. Long on direct examination; it was clearly beyond the scope of direct.  Dr. Coonrod argues that the issue was proper impeachment questioning because it "would have directly contradicted Dr. Blaylock's trial testimony and was thus proper impeachment."  Nowhere in Dr. Blaylock's testimony offered at trial did he offer the opinion that Dr. Chai or Dr. Long had not breached the standard of care, nor did he ever state that Dr. Coonrod and Dr. Newman's negligence alone was the cause of Maria's death.  This line of proposed

10

questioning did nothing to impeach Dr. Blaylock as it was not inconsistent with anything he offered in his direct testimony.

Likewise, Dr. Coonrod argues that if he had been permitted to ask Dr. Blaylock about his opinion as to the negligence of Dr. Long, Dr. Newman and the five other doctors who had seen Maria during the relevant time period, it would have shown bias. Dr. Coonrod's argues that by demonstrating that Dr. Blaylock had only found those doctors who were named in the lawsuit had acted negligently, and that other doctors who saw Maria during the relevant period had not, he could have shown that Dr. Blaylock was biased in his opinion. This argument is without merit. A showing that Dr. Blaylock had found that the non-party doctors were not negligent does not indicate bias; rather, it shows that the Aguilars' expert did not believe these medical providers had breached the standard of care, and thus the Aguilars did not include them in the lawsuit. It is clear that the real purpose for which Dr. Coonrod wanted to cross-examine Dr. Blaylock was to get him to offer his opinion that Dr. Chai and Dr. Long had acted negligently, so that they might be included on the special verdict form. We therefore find that the district court did not abuse its discretion in barring Dr. Coonrod from questioning Dr. Blaylock on cross-examination regarding his opinion as to the negligence of Dr. Chai and Dr. Long, or the five non-party doctors.

**B. The noneconomic damages cap in Idaho Code § 6-1603 limits the noneconomic damages award available in a wrongful death case as it applies to each heir individually.**

Dr. Coonrod next argues that the district court erred in applying the I.C. § 6-1603 cap on noneconomic damages to each individual plaintiff rather than to the Aguilars as a collective group.

1.  Standard of Review

Interpretation of statute is purely a question of law over which this Court exercises free review. *State, ex rel. Wasden v. Maybee*, 148 Idaho 520, 528, 224 P.3d 1109, 1117 (2010). Statutory interpretation begins with the literal words of the statute, giving those words their ordinary meaning, and construing the statute as a whole. *Id.* Where the literal words of a statute provide clear guidance the statute is deemed unambiguous and shall be interpreted according to its plain meaning. *Id.* Where a statute is capable of more than one reasonable construction, this Court will look beyond the

11

literal words of the statute and consider the reasonableness of each proposed construction, the public policy underlying the statute and its legislative history. *Id*.

### 2. Idaho Code § 6-1603 imposes a noneconomic damages cap on an individual basis.

At the time relevant to this action, I.C. § 6-1603 read, *inter alia*, as follows:

LIMITATIONS ON NONECONOMIC DAMAGES. (1) In no action seeking damages for personal injury, including death, shall a judgment for noneconomic damages be entered for a claimant exceeding the maximum amount of four hundred thousand dollars ($400,000); provided, however, that beginning on July 1, 1988, and each July 1 thereafter, the cap on noneconomic damages established in this section shall increase or decrease in accordance with the percentage amount of increase or decrease by which the Idaho industrial commission adjusts the average annual wage as computed pursuant to 72-409(2), Idaho Code. (2) The limitation contained in this section applies to the sum of: (a) noneconomic damages sustained by a claimant who incurred personal injury or who is asserting a wrongful death; (b) noneconomic damages sustained by a claimant, regardless of the number of persons responsible for the damages or the number of actions filed.

Act of 1987, ch. 278, S.L. pp. 575–76. The parties both agree that the applicable maximum amount of damages available, per claimant, under the relevant version of I.C. § 6-1603 is $682,200.65. Idaho Code § 6-1601 defines "claimant" as "any party to a civil action making a claim for relief, legal or equitable, compensatory or noncompensatory."

The literal words of I.C. § 6-1603 provide clear guidance as to its meaning, as such we decline to consider any argument pertaining to legislative intent or public policy. Although Dr. Coonrod argues that the history of wrongful death actions suggests that this Court should interpret "claimant" differently in a wrongful death case than it would in a personal injury case, nothing in the language of I.C. § 6-1603 itself suggests this distinction. If the legislature had intended for this Court to interpret a term differently depending on the type of action brought, it would have written the statute accordingly. From a plain reading of I.C. § 6-1603, the noneconomic damages cap applies to each individual bringing a cause of action, not on a per-claim basis.

### C. Attorney fees.

Dr. Coonrod seeks attorney fees on appeal, citing I.A.R. 40 and 41 and I.C. § 12-121, but offers no argument supporting his request. "[I]n order to be entitled to attorney fees on appeal, authority *and* argument must be presented in the first brief filed by a party

12

with this Court. A citation to statutes and rules authorizing fees, without more, is insufficient." *Carroll v. MBNA Am. Bank*, 148 Idaho 261, 270, 220 P.3d 1080, 1089 (2009) (emphasis added) (internal citation omitted). As Dr. Coonrod merely cites to statutes and makes no argument concerning attorney fees, he is not entitled to attorney fees. In addition Dr. Coonrod is not the prevailing party.

## III. CONCLUSION

We affirm the district court's denial of Dr. Coonrod's motion for a new trial, finding that the district court did not abuse its discretion in barring Dr. Coonrod from questioning Dr. Blayock on the issue of the purported negligence of Dr. Chai and Dr. Long. Dr. Coonrod failed to properly disclose Dr. Blaylock as an expert he intended to call, and he was thus barred from calling him during his case in chief. The areas that Dr. Coonrod was barred from questioning Dr. Blaylock about on cross-examination went beyond the scope of Dr. Blaylock's direct testimony and were not proper impeachment. We hold that the district court correctly found that I.C. § 6-1603's limitation on noneconomic damages applies on a per claimant basis, rather than a per claim basis. Costs to the Aguilars.

Justices EISMANN, J. JONES and HORTON, **CONCUR.**

Justice W. JONES, concurring in part and dissenting in part.

I concur in part and respectfully dissent in part from the Opinion of the Majority.

Although I concur with the Majority's holding that the district court did not abuse its discretion in preventing Dr. Blaylock from being called in Dr. Coonrod's case-in-chief, I must dissent from its conclusion that the district court did not abuse its discretion when it prevented Dr. Coonrod from questioning Dr. Blaylock on cross-examination, because I believe the subject matter of the questioning would have been well within the scope of direct examination.

First, I concur in the holding regarding timeliness and the adequacy of expert disclosures solely because the decision regarding disclosure of expert witnesses and their opinions is within the discretion of the trial judge and I cannot say that the judge abused his discretion as to this matter. However, I do believe the holding rests on shaky reasoning. The Majority holds that Dr. Coonrod's disclosure of Dr. Blaylock as a witness

13

is inadequate because "even if [the disclosures] had been timely filed, and properly included as expert disclosures, it would have been insufficient to meet the standard articulated in I.R.C.P. 26(b)(4)."

I respectfully disagree. Dr. Coonrod explicitly and specifically identified Dr. Blaylock as a witness he intended to call and he identified the subject matter of his testimony, the facts and data upon which that testimony was based, as well as the qualifications of Dr. Blaylock. The fact that Dr. Coonrod provided that information by way of reference to and incorporation of the content of the deposition and the content of the plaintiff's expert witness disclosures, under the facts of this case, was sufficient to comply with the discovery rules. It seems nonsensical to me, under the circumstances of this case, to require a defendant to re-type the entire relevant content of the deposition as well as the entire content of plaintiff's disclosure as to Dr. Blaylock when those documents were clearly incorporated.

The plaintiffs were already well aware of the content of Dr. Blaylock's expected testimony long before trial. Certainly then, there is no prejudice to plaintiffs that Dr. Coonrod did not fully regurgitate all of the information already known to and supplied by the plaintiff. In the present case, whether the timeliness of these disclosures as well the adequacy of the responses to interrogatories caused any prejudice to plaintiffs is highly questionable. I defer to the trial court's ruling on this issue solely because it was within his discretion. If I were entitled to substitute my discretion, I clearly would have held the disclosures adequate, even though slightly late, unless the plaintiff could show some prejudice. *State v. Anderson*, 145 Idaho 99, 105, 175 P.3d 788, 794 (2008) (holding that the magistrate did not abuse his discretion by not excluding expert testimony from trial even though it was not properly disclosed because the aggrieved party "was unable to show any prejudice as a result" of the violation). Since they already knew the full content of Dr. Blaylock's testimony and the parts favorable to the defendant, I see no way they could have been prejudiced. In nearly every trial there are issues of adequacy and timeliness of discovery and disclosures on both sides of the controversy. Although I believe the rules should be enforced, I also recognize reality in the trial process, having tried more than 120 cases to a jury verdict in private practice, and believe that unless there is some prejudice to a party there should be some laxity allowed in the requirements

14

of such rules, simply because the primary objective is to reach the truth based on all of the substantive admissible evidence rather than on strict adherence to procedural rules when no prejudice is involved. *Id.*

To be clear, I do not condone the practice of late and/or inadequate disclosures because I believe that under normal circumstances the opposing party could perhaps be prejudiced. While I agree that it is clearly better practice to completely comply with deadlines and the requirements of the rules, I think the unique facts of the present case indicate that sufficient leeway should have been allowed in order to reach a decision on the merits of the case. However, as I have already stated, given the standard of review, I concur with the Majority that there was no abuse of discretion

Another matter on which I wish to comment is the statement in the Majority Opinion that "[i]n the event they [defendants] wish to attempt to meet their burden of proof by calling the expert of their opponent, they must fully comply with the requirements of the Idaho Rules of Evidence." I do not see anything in the Rules of Evidence that would preclude the admissibility of Dr. Blaylock's proffered testimony, even though under the Idaho Rules of Civil Procedure the disclosures may not have been timely. Again, I do not think any violation of the timeliness requirements created any prejudice. I note that the discovery deadline was March 1, 2009 and Dr. Coonrod served his answers to interrogatories on the Aguilars on March 3, 2009, even though the answers were not officially filed, which is not normally required anyway, until March 9. Missing the deadline by two days can hardly be prejudicial when the plaintiffs already knew all of the substantive material and trial was still approximately two months away.

Although it may be the better practice for a defendant asserting the defense of comparative negligence to retain his or her own expert, I see nothing in the rules or the case law that would prevent a defendant from relying upon testimony of the opposing party's expert, if desired.

Idaho Rule of Civil Procedure 1(a) states that the "rules shall be *liberally* construed to secure the just, speedy and inexpensive determination of every action and proceeding." (emphasis added). This Court has reaffirmed the purpose of this rule. *Sines v. Blaser*, 98 Idaho 435, 439, 566 P.2d 758, 762 (1977) (stating that I.R.C.P. 1 "is a constant reminder that the rules are to be liberally construed, and a just result is always

15

the ultimate goal to be accomplished."). This Court has previously endorsed a liberal application of the disclosure rules by affirming the district court's decision to allow an expert witness who was not timely disclosed to testify on rebuttal. *McDonald v. Safeway Stores, Inc.*, 109 Idaho 305, 309, 707 P.2d 416, 420 (1985). The relevant inquiry should be whether or not the interests of justice are served. *See Edmunds v. Kraner*, 142 Idaho 867, 873, 136 P.3d 338, 344 (2006) ("The purpose of our discovery rules is to facilitate fair and expedient pretrial fact gathering. It follows, therefore, that discovery rules are not intended to encourage or reward those whose conduct is inconsistent with that purpose.").

I must dissent from that part of Section A holding that Dr. Coonrod could not read Dr. Blaylock's deposition to the jury on cross-examination. Idaho Rule of Civil Procedure 32(a)(1) provides under certain circumstances that a deposition can be used "by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness, or *for any other purpose* under the Idaho Rules of Evidence" (emphasis added). The only Rule of Evidence applicable to this matter would seem to be whether the deposition was being used for cross examination that was outside the scope of direct examination or was irrelevant. As for the scope of direct, I believe the trial court and this Court apply the rule regarding scope of cross-examination too narrowly, or at least do not apply it liberally, and thus I would hold that the trial court abused its discretion. The rule states that "[c]ross-examination should be limited to the *subject matter* of the direct examination." I.R.E. 611(b) (emphasis added). Indeed, cross-examination "is limited to facts stated in the direct examination or connected therewith," but "this allows cross-examination not only as to all facts stated by a witness in his original examination, but as to other facts connected with them, directly or indirectly tending to explain, modify, or qualify the inference resulting from the facts stated by the witness in his direct examination." *Towne v. Nw. Mut. Life Ins. Co.*, 58 Idaho 83, 70 P.2d 364, 367 (1937). On direct, Dr. Blaylock testified regarding the standard of care for recognizing pulmonary emboli, testified that Dr. Coonrod was negligent for not diagnosing Maria, and that he caused her death by failing to do so. Cross-examination of Dr. Blaylock would have allowed Dr. Coonrod to show that at least at one time, Dr. Blaylock believed the treatment of two doctors other than Dr. Coonrod contributed to the cause of Maria's death by breaching the standard of care. That fact goes directly to the issue of causation

16

which was a subject matter clearly raised on direct. I fail to see how this cross-examination intended to prove comparative causation among tortfeasors is outside the scope of direct examination, and I would hold that the district court abused its discretion in determining that it was.

I concur with Part B of the Majority's Opinion.