# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48656

<table>
<tr><td>

CAROLE A. BETTWIESER,

    **Petitioner-Respondent,**

v.

MARTIN H. BETTWIESER,

    **Respondent-Appellant.**
</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
</td><td>

**Filed: November 23, 2022**

**Melanie Gagnepain, Clerk**

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**
</td></tr>
</table>

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, Senior District Judge. Hon. Roger E. Cockerille, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming judgment and decree of divorce, <u>affirmed</u>.

Martin H. Bettwieser, Boise, pro se appellant.

K. Mitchell Law, PLLC; Katelynn C. Mitchell, Boise, for respondent.

_____

GRATTON, Judge

Martin H. Bettwieser (Martin) appeals from the decision of the district court, on intermediate appeal from the magistrate court, affirming the judgment and decree of divorce. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Martin and Carole Bettwieser (Carole) were married May 14, 2013. Prior to their marriage, they signed a premarital agreement that primarily ensured Martin and Carole's separate property remained separate throughout their marriage for the benefit of their adult children. The premarital agreement also defined under what circumstances Martin or Carole would seek a divorce. Later they signed a postnuptial agreement (supplemental agreement) that demarcated separate property Carole acquired after marriage and explained a lifetime rent payment Carole made to Martin. Carole filed for divorce in November 2018, asserting irreconcilable differences. Martin denied

1

Carole's claim for reimbursement of future rent and asserted a divorce was preventable. He also counterclaimed for breach of contract under the marital agreements.

In January 2019, Martin filed a motion for mediation which the magistrate court denied. In March 2019, Carole was granted a temporary protection order against Martin.[1] In April 2019, Martin filed a motion requesting a mental examination of Carole, the magistrate court denied this motion. In May 2019, the magistrate court issued a temporary order that assigned the utility bills of Martin's home to Martin, relieving Carole from her responsibility to pay the cable bill.

Prior to trial, the magistrate court ordered sanctions against Martin for improperly terminating his deposition. Specifically, the magistrate court prohibited Martin from testifying on his own behalf at trial and struck his counterclaims seeking relief under the marital agreements. The trial was held in October 2019. In November 2019, the magistrate court issued its judgment and decree of divorce along with its findings of fact and conclusions of law. Martin appealed the divorce decree among other orders to the district court. The district court affirmed the magistrate court's judgment. Martin timely appeals from the district court's intermediate appellate decision.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id.* Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

## III.

## ANALYSIS

Martin's appeal raises several issues. Carole responds that many of Martin's issues are not preserved and otherwise lack merit. Carole also requests attorney fees and costs on appeal. We

---

[1] This order was granted by a different court in a different case.

2

will address each of Martin's preserved issues below and Carole's request for attorney fees and costs. We turn first to the claims of error in the district court on intermediate review.

## A. District Court's Intermediate Appellate Opinion

### 1. Issues preserved

Martin contends it was error for the district court to disregard four of his issues on appeal. On intermediate appeal, Martin identified seven issues on appeal to the district court. Regarding four of those issues, the district court stated:

> In the Appellant's opening brief, he raised seven issues. Many of the issues presented are not supported by authority. The Appellant's Reply Brief presents additional argument and authority for some of the issues presented, but this Court looks only to the initial brief on appeal for the issues presented because that is what the Respondent has the opportunity to respond. [*Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005)]. The Court will not consider Appellant's Issues on Appeal numbered in this decision as 3, 4, 6, and 7. The Appellant letters his Issues on Appeal and breaks them down into sub-issues. The issues are grouped as A. Pre-trial issues, B. Trial thru Judgement and Decree of Divorce Issues, and C. Post Judgment issues. The issues not considered include: (1) the magistrate sanctioning the Appellant; (2) if Appellant was prejudiced against a fair and adequate trial; (3) if there should have been additional Findings of Fact and Conclusions of Law; and (4) if the magistrate erred by denying the Appellant's Motion to Reconsider.

It is well-established law that issues on appeal must include citations to the record, substantive argument, and cited authority. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997).

In Martin's arguments on issues 3, 4, and 6, he failed to cite to legal authority. Furthermore, his arguments were conclusory and he merely referenced prior motions and briefs to supplement his argument and authority. As to issue 7, although Martin provided one legal citation, he again referenced prior motions to supplement his argument but did not cite to the record and the paragraph was conclusory and lacked a cogent argument. It is improper to suggest the district court go read other motions and briefs to supplement the argument on appeal. Without any citation to the record, legal authority, or cogent argument, it was well within the district court's discretion to declare these issues waived and decline to address them. We, therefore will only review those issues and arguments properly raised and addressed in the district court.

### 2. District court findings

Next, Martin argues it was improper for the district court to make its own factual findings on intermediate appeal. Our standard of review applicable to an intermediate appellate opinion by

3

the district court provides we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo*, 154 Idaho at 858-59, 303 P.2d at 217-18. However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. In other words, we will direct our attention to what the magistrate court did, determine whether it erred, confirm whether the district court came to the same conclusion, and then affirm or reverse the district court. Consequently, any factual findings the district court made are inconsequential and our standard of review resolves Martin's concerns.

### 3. Settlement of record on appeal

Martin also complains about the appellate process and creating a record for appeal. He requests this Court to "intervene[e] and criti[que] and supervise for correction whether the appeal record requested by the appellant, from the district court to the Supreme Court meets the proper criteria set out" in the Idaho Appellate Rules. Lastly, Martin suggests an update to the appellate rules to fix his grievances. Idaho Appellate Rule 29 provides, "[t]he parties shall have 28 days from the date of the service of the transcript and the record within which to file objections to the transcript or the record, including requests for corrections, additions or deletions." A notice setting the objection for hearing must accompany any objection. I.A.R. 29. After the hearing, once the district court has made its determination the record shall be deemed settled. *Id.*

The only error Martin has identified is the failure to hold a "proper settlement hearing" relative to the appellate record. From what we can glean, Martin objected to the record but never appeared at the hearing. The district court denied his motion without prejudice providing him the opportunity to file a motion for rehearing and reconsideration. Martin filed a motion, but instead of asking for reconsideration relative to the record, Martin attempted to challenge the district court's jurisdiction, which the district court denied. Consequently, Martin never pressed any challenge to the record on the merits and so the district court deemed the record settled. We find no error by the district court when it settled the record on appeal. Martin had the opportunity to object, was provided a hearing, and had an opportunity for reconsideration.

Regarding the record before this Court, it is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell*, 130 Idaho at 127, 937 P.2d at 439. Per I.A.R. 30(a), if Martin felt the record before this Court was lacking then it was his responsibility to file a motion to augment or delete the record. In fact, Martin did precisely that

4

and this Court granted multiple motions to augment the appellate record. Even if this Court found issue with the record on appeal, there is no remedy beyond what has already been provided to Martin.

**B.      Irreconcilable Differences and the Marital Agreements**

Martin argues that the magistrate court erred because the divorce should not have been allowed under irreconcilable differences, and the premarital and supplemental agreements are invalid.

**1.      Irreconcilable differences**

Martin provides several arguments as to why irreconcilable differences was not an appropriate finding made by the magistrate court. He argues irreconcilable differences should be interpreted to incorporate the gravity, fault, and willfulness embodied in the other seven grounds for divorce set out in Idaho Code § 32-603.[2]  In addition, he argues the legislative intent of I.C. § 32-716 means both parties must consent to divorce when the grounds for the divorce are irreconcilable differences.[3]

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted

---

[2]      Idaho Code § 32-603 provides that a divorce may be granted for any of the following causes:
> 1. Adultery.
> 2. Extreme cruelty.
> 3. Wilful desertion.
> 4. Wilful neglect.
> 5. Habitual intemperance.
> 6. Conviction of felony.
> 7. When either the husband or wife has become permanently insane, as provided in sections 32-801 to 32-805, inclusive.
> 8. Irreconcilable differences.

[3]      Martin misconstrues the language of I.C. § 32-716. That section deals with reconciliation proceedings and merely states that nothing therein shall prevent the trial court from trying the divorce and entering judgment with the consent of the parties. It does not say that both parties must consent to a divorce on any ground or embody such legislative intent.

for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). If it is necessary for this Court to interpret a statute because an ambiguity exists, then this Court will attempt to ascertain legislative intent and, in construing the statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Where the language of a statute is ambiguous, constructions that lead to absurd or unreasonably harsh results are disfavored. *See Jasso v. Camas Cnty.*, 151 Idaho 790, 798, 264 P.3d 897, 905 (2011). Idaho Code § 32-603 is unambiguous. There are eight causes for divorce in the state of Idaho; one of those causes is irreconcilable differences. Idaho Code § 32-616 defines irreconcilable differences as: "those grounds which are determined by the court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved." Martin's argument that irreconcilable differences must encompass the other statutory grounds for divorce is unfounded because irreconcilable differences is defined by statute and does not include the other, independent grounds for divorce.

Martin also challenges the factual findings made by the magistrate court under irreconcilable differences. Where a trial court sits as a finder of fact without a jury, the court is required to enter findings of fact and conclusions of law. Idaho Rule of Civil Procedure 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven.

6

*Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

The magistrate court made the following findings as to irreconcilable differences:

> There are substantial reasons to discontinue the marriage, which constitute irreconcilable differences. The biggest of these differences is that the parties have different religious beliefs. Martin also has a very controlling nature. For example, he would not let Carole play tennis with other men. Martin's domineering nature also interfered in Carole's ability to interact with her own family, including her adult children. Carole should be granted a divorce.

Martin asserts multiple errors made by the magistrate court. First, he argues there cannot be irreconcilable differences due to religious differences because they were aware of those differences prior to marriage and had been praying together during their marriage. Second, he argues there was not substantial evidence to support the conclusion that he had a controlling and domineering nature during the marriage. Lastly, Martin argues the magistrate court's finding that it was a loveless marriage was erroneous because that would require both parties had no love for each other and there was no evidence to support that.[4] Martin further argues that love is irrelevant because you do not need love to get married.

There was substantial and competent evidence to support the magistrate court's finding of irreconcilable differences. It is not dispositive that Martin and Carole were aware of their religious differences prior to marriage. Carole's testimony showed Martin and Carole agreed they would respect each other's religious differences prior to marriage, but as the marriage progressed Martin pushed Carole to change her stance on religion and participate in his religious practices. This change created stress and conflict surrounding their religious differences rather than mutual respect.

Next, Carole testified she was not a part of the household decisions or rules. She testified that Martin's interactions with her family became unwelcoming, and her daughter no longer wanted to visit the home. Carole testified Martin told her she could not play mixed doubles tennis. She described Martin as controlling and felt he was suppressing who she was as a person. All of this testimony is sufficient evidence for the magistrate court to find Martin had a controlling and domineering nature in their marriage. Therefore, there was sufficient and competent evidence for

---

[4]    The magistrate court commented that one is not required to remain in a loveless marriage. However, that comment was made in the context of determining the validity of the divorce clause in Martin and Carole's marital agreements.

the magistrate court to find there were irreconcilable differences in the marriage and that divorce was appropriate.

## 2. Marital agreements

Martin argues the magistrate court and district court erred in finding the marital agreements were, in part, invalid due to unconscionability or as against public policy.[5]

"The 'liberty of contract is not an absolute and unlimited right, but upon the contrary is always subservient to the public welfare.'" *Hill v. Am. Family Mut. Ins. Co.*, 150 Idaho 619, 623, 249 P.3d 812, 816 (2011) (quoting *J.F. v. D.B.*, 116 Ohio St.3d 363, 879 N.E.2d 740, 741 (2007)). "[T]he courts will not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way." 17A C.J.S. *Contracts* § 218 (2010). "The usual test applied by courts in determining whether a contract offends public policy and is antagonistic to the public interest is whether the contract has a *tendency* toward such an evil." *Stearns v. Williams*, 72 Idaho 276, 283, 240 P.2d 833, 837 (1952) (emphasis added). Whether a contract is against public policy is a question of law for the court to determine from all the facts and circumstances of each case. *Id.* Public policy may be found and set forth in the statutes, judicial decisions, or the constitution. *Id.* at 287, 240 P.2d at 840. A contract prohibited by law is illegal and hence unenforceable. *Miller v. Haller*, 129 Idaho 345, 351, 924 P.2d 607, 613 (1996).

The clause at issue in the marital agreements[6] provides (verbatim):

(15) That neither party will seek divorce except on the grounds of adultery, physical violence or emotional infidelity to a person, if they do the person seeking the divorce will forfeit to the other party the total of all assets cited herein as well as any increases from those amounts cited herein within 30 days of filing for divorce or may pay an amount of $4000.00 a month until the cumulative total of the assets are paid in full to the party or to that parties['] children in the event of

---

[5] Although both the magistrate court and the district court note that Martin's counterclaims were struck as sanctions, this Court is not convinced Martin's request to enforce the marital agreements was a counterclaim, but rather should be interpreted as a defense in his answer to the divorce petition. Carole placed the marital agreements at issue when she identified them in her divorce petition, she sought to enforce parts of the marital agreements, and she was seeking a divorce as her relief. Martin originally used the marital agreements in his defense as to why the court should not grant a divorce; he was not seeking relief under the marital agreements, which would have been a counterclaim. Nevertheless, both the magistrate court and district court addressed the issue and found the marital agreements were invalid as against public policy.

[6] The clause was written in the premarital agreement and then the supplemental agreement incorporated the premarital agreement.

death. All community assets will be forfeited also. That neither party is obligated to seek divorce under any condition.

Idaho Code § 32-603 provides the causes for divorce, which includes irreconcilable differences. Idaho has adopted this no-fault criterion in addition to the statutory causes. *Ripatti v. Ripatti*, 94 Idaho 581, 583, 494 P.2d 1025, 1027 (1972) (characterizing the addition of "irreconcilable differences" as a "no fault criterion" for divorce under I.C. § 32-603). It is clear from the statute that a divorce may be granted when the marriage has "deteriorated beyond conciliation." *Ripatti*, 94 Idaho at 583, 494 P.2d at 1027. A person seeking a divorce in Idaho is not required to prove "fault," such as adultery, or any other statutory cause besides irreconcilable differences. By codifying irreconcilable differences, Idaho has recognized the harm a marriage with irreconcilable differences can cause to the individuals, as well as the community. This conclusion leads us to agree that it would be against public policy to deny a citizen the right to seek a "no fault" divorce based on irreconcilable differences as defined in I.C. § 32-616.

However, the language of the divorce clause stated that if Martin or Carole sought a divorce under irreconcilable differences then they would be financially liable to the other. Although the language does not explicitly deny the ability to seek a divorce for irreconcilable differences, it is a distinction without a difference. To financially penalize an individual for enforcing his or her statutory rights is the same as attempting to deny a citizen the statutory right. Consequently, the divorce clause is against public policy, which renders the marital agreements invalid.

Martin further argues the divorce clause is enforceable under the doctrine of waiver. Waiver is not a remedy precluding enforcement of public policy. There are some statutory rights that may be waived by contract and others that cannot be waived or exempted by contract. *Lee v. Sun Valley Co.*, 107 Idaho 976, 979, 695 P.2d 361, 364 (1984). When it is against public policy to deny a citizen the right to seek a divorce under I.C. § 32-603, as we have concluded, it follows that the right cannot be waived either.[7]

---

[7] Martin submits that the marital agreement can only be invalid under I.C. § 32-925, which Carole did not prove and that I.C. § 32-923(g) provides that parties to a premarital agreement may contract to the choice of law, which they did by requiring a fault-based cause. First, Martin's argument as to I.C. § 32-925 is both unpreserved and inapposite; even though I.C. § 32-925 provides premarital agreements are not enforceable when unconscionable this does not exclude the application of contract law, such as against public policy. Second, Martin misunderstands choice of law. Choice of law does not mean citizens can contract to create their own legal rights and duties. A choice of law dictates which state's law that will govern the contractual rights and

The district court correctly affirmed the magistrate court's finding that the marital agreements were invalid as against public policy.[8]

## C.   Sufficiency of the Magistrate Court's Findings of Fact and Conclusions of Law

Martin argues the magistrate court's findings of fact and conclusions of law are "vague," "overly broad," "conclusory," and "ambiguous." Martin's argument misunderstands the magistrate court's role and responsibilities. It is the magistrate court's role as trier of fact to make factual findings. I.R.C.P. 52(a); *Estate of Hull*, 126 Idaho at 440, 885 P.2d at 1156. The magistrate court bases its findings of fact upon the evidence provided during trial. I.R.C.P. 52(a). The magistrate court does not need to cite to authority when making factual findings.

Martin further argues the magistrate court's order was ambiguous and lacked specificity. The only specific error he provides is that it was difficult to determine whether the magistrate court found the marital agreements invalid as a whole or in part. As previously discussed, Martin failed to raise this issue before the district court, consequently we refuse to address the issue further.[9]

## D.   Pretrial Orders

Martin claims the magistrate court erred relative to three pretrial orders: (1) the cable bill; (2) alternative resolution orders; and (3) sanctions.

### 1.   Cable bill

Martin contends the magistrate court erred in awarding Carole $183.41 "for the June cable bill" and "by not awarding Martin that amount and having Martin to pay the cable bill from that time until the divorce was finalized."

Idaho Code § 32-704 states that in the court's discretion it may order payment of temporary maintenance. The magistrate court entered a temporary order on May 2, 2019, requiring, in relevant part, that Martin "pay all costs for utilities associated with the home" in which Martin

---

duties of the parties. *See Carroll v. MBNA Am. Bank*, 148 Idaho 261, 265, 220 P.3d 1080, 1084 (2009).

[8]    Martin's claims of promissory estoppel, statute of limitations, and parole evidence rule were not raised below and will not be further addressed. Moreover, these assertions are not supported by cogent argument or applicable authority. A party waives an issue on appeal if either relevant authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Thus, we decline to consider the merits of these arguments.

[9]    Moreover, Martin has articulated on appeal which provisions of the agreements he feels are inconsistent with the magistrate court's rulings, thereby demonstrating an understanding of the magistrate court's application and refusal to apply various provisions of the agreements.

lived. At the time of the temporary order, the cable bill was under Carole's name and she was paying the bill although she was not living in the home. It was reasonable for the magistrate court to conclude that Martin should assume responsibility for the cable bill in May 2019. When Martin failed to comply in a timely fashion, Carole paid the bill. The magistrate court then ordered the reimbursement of $183.41 to Carole; this award was incorporated into the divorce decree because Martin had yet to reimburse Carole. The district court affirmed, concluding the magistrate court did not abuse its discretion in this regard.[10]

On appeal, Martin argues that, under the marital agreements, the cable bill was Carole's responsibility and therefore the $183.41 should have remained assigned to her to maintain the status quo throughout the divorce proceedings. We agree with the district court that it was within the magistrate court's discretion to assign utility costs to the individual that was using the utilities. To the extent Martin contends the marital agreement foreclosed requiring Martin to pay his own utility bills, the argument is unpreserved. The only argument Martin made in his opening brief to the district court on this issue was that Carole "had ample financial resources and did not need a temporary order and never complained she could not continue paying the bills as she did so previously for the previous 8 months before receiving relief." As noted by the district court, the magistrate court had the ability to consider the parties' "salaries and financial abilities" and did not abuse its discretion. Martin has failed to show otherwise.[11]

---

[10] To the extent Martin challenges the magistrate court's temporary maintenance order; because the magistrate court's temporary maintenance order was superseded by the judgment and decree of divorce, Martin's challenge to this order is untimely. *See Nelson v. Nelson*, 144 Idaho 710, 714, 170 P.3d 375, 379 (2007) (declining to address challenges to superseded orders on appeal because such challenges are "neither timely nor appropriate").

[11] On appeal, Martin argues he cannot ascertain whether the magistrate court invalidated the marital agreements as a whole or just the divorce clause, which in turn affects his ability to challenge whether the magistrate court erred in its property distribution. Martin did not make a similar argument to the district court until his reply brief, which never afforded Carole the opportunity to respond and, consequently, the district court did not address the issue. Moreover, Martin argues if the magistrate court invalidated the whole marital agreement then the court erred and should have identified all property as community and conducted an equitable distribution. Martin did not raise this issue before the district court. When a party has failed to preserve an issue, we will not address it on appeal. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

## 2.    Alternative resolutions

Martin argues the magistrate court erred by: (1) denying his motion for a mental health examination of Carole; (2) denying his motion for mediation; and (3) denying his motion for marital counseling between himself and Carole.

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Idaho Rules of Family Law Procedure 416(a)(1) provides:

> When the mental, physical, or vocational condition of a party or any other person is in controversy, the parties by stipulation, or the court by order, may require that person to submit to a physical, mental, or vocational evaluation by a designated expert or to produce for evaluation the person in the party's custody or legal control.

The court order for a mental evaluation "may be made only on motion for good cause . . . ." I.R.F.L.P. 416(2)(A).

The magistrate court denied the motion, concluding: "The moving party has failed to meet his burden to show that a mental examination should be ordered." Martin's motion was conclusory and suggested Carole's legal actions were evidence of a mental condition. Filing for divorce and seeking a civil protection order are not evidence of a mental condition or that a mental examination is necessary. As noted by the district court, the magistrate court did not find Martin's "generalized allegations" regarding Carole's mental health persuasive. It was well within the magistrate court's discretion to deny Martin's motion for a mental examination. Martin has shown no error in the district court's decision affirming the magistrate court's denial of Martin's request for a mental examination.

Regarding mediation, Martin contends alternative dispute resolution is required in divorce cases and, as such, the magistrate court erred in failing to order mediation. Rule 603(b), I.R.F.L.P., provides all issues in family law actions other than child custody are eligible for referral to mediation. It is within the court's discretion to order mediation. I.R.F.L.P. 603(d). The magistrate court recognized its discretion to order mediation pursuant to I.R.F.L.P. 603 and concluded "Martin has failed to persuade the court that this case is appropriate for mediation. Given the [civil

12

protection order], the district court case, and this contentious divorce, the court is loath to order mediation absent the (sic) Carole's willingness to participate." Ordering mediation is purely discretionary and it is not an abuse of discretion to deny a mediation request when one party is reluctant to participate. We agree with the district court that the magistrate court acted "within the bounds of discretion, consistent with legal standards, and [its decision] was reached through reason."

Lastly, Martin challenges the magistrate court's order denying his motion for marital counseling. Martin failed to provide the magistrate court's order in the clerk's record and in the augmented record. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell*, 130 Idaho at 127, 937 P.2d at 439. In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.* However, even accepting that the magistrate court denied Martin's motion for marital counselling, Martin has failed to provide any cogent argument or authority in support of such a claim and has, therefore, failed to show error in the district court's decision concluding Martin showed no abuse of discretion by the magistrate court.

### 3. Sanctions

Martin argues the magistrate court abused its discretion by sanctioning Martin for his non-compliance with his deposition. The district court dismissed this issue for lack of argument and authority. An issue that has been waived at the intermediate level cannot be appealed to this Court. *See Fed. Home Loan Mortg. Corp. v. Butcher*, 157 Idaho 577, 581, 338 P.3d 556, 560 (2014) (stating that it is "well settled that an issue is not preserved for review by this Court even though it was raised before the magistrate when the issue is not raised later before the district court in the intermediate appeal").

### G. Attorney Fees and Costs on Appeal

Carole is the prevailing party on appeal and requests attorney fees under I.C. § 12-121 and I.A.R. 41. An award under this provision is appropriate if the non-prevailing party pursued, defended, or brought the appeal frivolously, unreasonably, or without foundation. *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 163 Idaho 215, 230, 409 P.3d 795, 810 (2017). To receive an award of attorney fees under I.C. § 12-121, the entire appeal must have been pursued frivolously, unreasonably, and without foundation. *Shepherd v. Shepherd*, 161 Idaho 14, 21, 383 P.3d 693, 700 (2016). "Such circumstances exist when an appellant has only asked the appellate court to

13

second-guess the trial court by reweighing the evidence, has failed to show that the trial court incorrectly applied well-established law, or has failed to provide authority or legal argument in support of the party's assertion." *Voss v. Voss*, 169 Idaho 518, 531, 497 P.3d 1138, 1151 (Ct. App. 2021).

We conclude that Carole is entitled to an award of attorney fees on appeal under I.C. § 12-121 and I.A.R. 41. Throughout Martin's briefs, he failed to cite to the record, provided argument without supporting legal authority, and discussed issues that were either never raised before the district court or waived below. Additionally, Martin continuously requested this Court to second-guess the findings of the magistrate court and reweigh the evidence without showing any abuse of discretion by the magistrate court. He misconstrued well-established law, which in turn created illogical and irrelevant arguments. Overall, Martin pursued this appeal frivolously, unreasonably, and without foundation. For these reasons, an award of attorney fees to Carole under I.C. § 12-121 and I.A.R. 41 is appropriate.

## IV.

## CONCLUSION

The district court did not err when it affirmed the magistrate court's judgment and decree of divorce. Accordingly, we affirm the district court's decision affirming the magistrate court. Further, we award Carole attorney fees under I.C. § 12-121 and I.A.R. 41 and costs under I.A.R. 40.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.